GEORGE HENCKEN, JR., *et al.*, Appellants, *against* THE UNITED STATES LIFE INSURANCE COMPANY *et al.*, Respondents.

(Decided December 4th, 1882.)

An action by the holder of a policy in a mutual life insurance company, for equitable relief, against the company and its officers, cannot be maintained upon an alleged trust in the defendants for the benefit of the plaintiff. The relations between the company and its policy holders are those of contractors, the contract being the policy, by which the liabilities of the company are to be determined.

Allegations, by holders of policies of life insurance, of fraud on the part of the insurers, in inducing the assured to surrender their policies and accrued dividends for a sum much less than the value, and to take a new

policy at a higher premium, containing terms and conditions less bene-
ficial to the assured, are not sustained where it appears that the policy
holders had, at the time, either full knowledge of or full opportunity to
ascertain all the facts; that they made no complaint for years afterward,
and then applied a dividend accrued on the new policy to pay the pre-
mium upon it; and that the value of the dividends surrendered was at
the time uncertain, and whatever might be said of it was matter of
opinion only.

The "reserve" of a life insurance company, being the sum of money
which the company is required by law to keep at all times in hand and
safely invested, sufficient to re-insure, protect, and indemnify all its out-
standing risks and obligations, is merely a fund for the security of the
policy holders; and no loss to the assured on that account is incurred by
the surrender of a policy.

APPEAL from a judgment of this court entered upon the
dismissal of a complaint.

The plaintiff, Mrs. Hencken, held two policies issued by
the defendant the United States Life Insurance Company
upon her husband's life; one dated July 7th, 1859, when he
was 31 years of age, for $5,000, at a quarterly premium of
$30.45, and the other dated May 9th, 1866, for $5,000, annual
premium $275 for ten years; and she was entitled to divi-
dends out of the profits of the company declared upon the
policy, to be collected by her with the face amount of the
policy when the latter became payable.    On May 1st, 1871,
there were credited on the two policies $545.35 of dividends,
which at that date she surrendered to the company for the
sum of $408.99.    On September 7th, 1872, she surrendered
both policies to the company and took out a new policy for
$10,000 on her husband's life at an annual premium of
$364.60.    In this transaction the company cancelled Mr.
Hencken's note for $554.04, given for money lent him by
the company on the policy of 1866, and allowed the plaint-
iffs four years' premiums on the new policy.    Mr. Hencken
gave his check for $58.40, and put in his unearned premi-
ums on the old policy, $203.70.

It is claimed by plaintiffs that the surrender of dividends
and policies, and taking out the new policy, was procured
by a fraud practiced on plaintiffs by defendants, the com-

pany and certain of its officers and agents; that the defend-
ants devised a scheme for relieving the company of its
liability for existing policies and their accrued dividends by
persuading policy holders that the present value of both
policies and dividends was less than it was in fact, and that
it was for their benefit and advantage to cancel the old
policies, take out new ones and surrender their dividends
for a cash allowance; that the scheme was a conspiracy
between the officers of the company, who were stockholders
in it, to benefit the company and increase the value of the
stock at the expense of the policy holders, and that the
transaction with the plaintiffs was one of several thousand
with other policy holders.

This action was brought on behalf of all other policy
holders equally injured, to set aside the surrenders, restore
the old policies, cancel the new ones, and for an accounting
by the officers of the company as alleged trustees of the
property, funds and assets of the company for the benefit
of the policy holders. Upon trial by the court without a
jury, the complaint was dismissed and judgment entered for
the defendants. From the judgment the plaintiffs appealed.

*W. I. Butler*, for appellants.—The corporation is mutual;
the policy-holders are members; and the relation of one to
the other is a trust. The case of *St. John* v. *American Mutual
Life Ins. Co.* (13 N. Y. 33),—relied upon by the court below
as an authority for holding that this case is to be governed
by the principles which apply to contracts and not by those
which apply to trusts,—relates simply to the assignability
of a life policy, and decides merely that a policy is such a
contract or chose in action as is capable of being trans-
ferred. And previous decisions of this court on the ques-
tion of trust, in cases of life insurance companies (*Taylor*
v. *Charter Oak Life Ins. Co.*, 9 Daly 489), have been in
cases arising under charters different from the charter of
this defendant. The charter provisions for the mutual plan
being applied to this company are absolutely conclusive of
this question. The nature of mutual companies, and who

are members of such a company, and what constitues "mutuality" are fully and fairly considered in the case of *Mygatt* v. *New York Protection Ins. Co.* (21 N. Y. 52). If the court shall find that this company is a mutual company, and that its policy-holders are therefore members and corporators, entitled even to be elected trustees (see its charter), it is impossible to hold that no trust existed between the company and the Henckens.

The amendment of the charter gave no power to cancel and retire the old dividends. Every policy-holder had a vested interest in them, and had the right to insist that they be retained according to the charter; and such a vested right could not be disturbed by the legislature.

To effect either the retirement of notes or the purchase of dividends, it was wholly unnecessary to cancel old policies, or to issue new ones, or in any manner to change the form of the then existing policies. But neither the notes nor the dividends were in any sense a burden or a detriment to the company. The true object of these changes and settlements was the profit to the company resulting therefrom.

This is not an action for damages. It is simply an equity action to set aside certain transactions and to restore the former *status* of these plaintiffs. The individual defendants are joined for the purpose of securing an accounting; not with a view of claiming damages against them. Hence the judgment should not be sustained in favor of the individual officers if it be reversed as to the corporation.

*W. A. Ogden Hegeman*, and *Wm. H. Ingersoll*, for respondents.—The relation between the plaintiffs and the defendant company was established merely and wholly by the policy contract (Roccus de Assecur. n. 1; *Whittingham* v. *Thornbury*, 2 Vern. 206 ; *Patterson* v. *Powell*, 9 Bing. 320; *Dalby* v. *India & London Assur. Co.*, 15 C. B. 365, 28 Eng. Law & Eq. 312; Bunyon on Life Ins. §§ 1, 2; Ellis on Life Ins. 185; Marshall on Ins. 766; Angell on Ins. § 274; May on Ins. § 1; *Commonwealth* v. *Weatherbee*, 105 Mass. 149;

Phillips on Life Ins. § 1; Bliss on Life Ins. § 3, and authorities therein cited; *St. John* v. *American Mutual Life Ins. Co.*, 13 N. Y. 33). No relation of trustee and cestui que trust exists or ever did exist (*Taylor* v. *Charter Oak Life Ins. Co.*, 9 Daly 489, 59 How. Pr. 468; *Day* v. *Connecticut Gen. Life Ins. Co.*, 45 Conn. 480, 7 Ins. L. J. 904; *People* v. *Security Life Ins. &c. Co.*, 78 N. Y. 120; *Bewley* v. *Equitable Life Assur. Soc.*, N. Y. Daily Reg. July 22d, 1881). Nor is there any relation even "in the nature of partnership." It is that of an express contract (*Cohen* v. *New York Mutual Life Ins. Co.*, 50 N. Y. 610; *Mutual Benefit Life Ins. Co.* v. *Hilliard*, 39 N. J. L. 444, 4 Ins. L. J. 139; *Garsaway* v. *Huntington*, U. S. Supreme Ct., N. Y. Herald Aug. 1st, 1878; *People* v. *Security Life Ins. &c. Co.*, 78 N. Y. 120; *Taylor* v. *Charter Oak Life Ins. Co.*, 9 Daly 489, 59 How. Pr. 466). Such contracts (policies of life insurance) are governed by the same principles applicable to other agreements involving pecuniary obligations (*St. John* v. *American Mutual Life Ins. Co.*, 13 N. Y. 39).

There is no "mutuality" in any legal sense in the contract relations between policy holders and the company. The contract of insurance is unilateral. There exists no mutuality such as in cases of partnership; there is no community of interest (*People* v. *Security Life Ins. &c. Co.*, 78 N. Y. 120; *Mutual Benefit Life Ins. Co.* v. *Hilliard*, 39 N. J. L. 444, 4 Ins. L. J. 139; *Cohen* v. *New York Mutual Life Ins. Co.*, 50 N. Y. 610; *Taylor* v. *Charter Oak Life Ins. Co.*, 9 Daly 489, 59 How. Pr. 466; *Bewley* v. *Equitable Life Assur. Soc.*, N. Y. Daily Reg. July 22d, 1881).

There is no reserve required by law to be kept as such, as between the corporation doing a life insurance business and any particular policy holder, as to his particular policy, nor as to any class, as such, of policy holders (See statutes, L. 1853, c. 463, § 13 as amended L. 1866, c. 785, § 1; L. 1868, c. 623, § 1; L. 1873, c. 849, § 1; also L. 1853, c. 463, § 17).

There is no liability on account of reserve to any body in any legal sense, except (in a sense) in the case provided by

statute as to policies being continued thereby after lapse, which statute does not, however, apply to plaintiffs' case. As between the state and the company reserve is called a liability, but not in the sense that it is a liability which the company owes the state. Nor can it be a liability to any policy holder or body of policy holders to enforce the payment or fulfillment of which he or they can have any right of action.

Plaintiffs had full opportunity and freedom to examine anywhere, as to the company's offer of what value it would allow for the old policies, and they could have made inquiry, and must be presumed to have looked into the matter, and are presumed to know what they might have ascertained as to the sufficiency or acceptability of what the company proposed to allow for the two old policies, and whether one form was more favorable to policy holders than other forms. But these matters are mere matters of opinion, and are not matters of legal damage, especially where questions of value are either scientific and conjectural and merely estimated (as all the evidence shows this offer and its acceptance to have been), or optional (*Furman* v. *Titus*, 49 Super. Ct. 284; Bigelow on Fraud, 18, 66; Story Equity, § 207; 2 Addison on Torts 104; *White* v. *Seaver*, 25 Barb. 235; *Butler* v. *Viele*, 44 Barb. 166; *Lynsey* v. *Seeley*, 2 L'd Raym. 1118, 1120).

The acts of the company and of the plaintiffs were not merely lawful and authorized by the enabling act of May 6th, 1870, but a necessary, wise, well considered, clearly disclosed and understood, and faithfully carried out business matter and plan (*Suydam* v. *Morris*, 8 Barb. 358; *Hyatt* v. *McMahon*, 25 Barb. 457; L. 1868, c. 118; L. 1870, c. 710). But the legislative act did not affect the rights or compel the acts of the plaintiffs in making the changes they requested, which were entirely optional with policy holders.

These policies were issued under and in pursuance of the charter, and were subject to the right of the legislature to alter, modify or repeal the charter or any of its provisions. And even if the amendment of the charter of 1870 affected

a substantial right of the plaintiffs (which is not the fact), their doing an act to their own use and benefit, which would be otherwise impracticable, was an adoption of the express provisions of the amendment as beneficially affecting them.

The matter of dividends does not afford to a policy holder a right to interfere or intervene in the management or affairs of a corporation (*People* v. *Security Life Ins. &c. Co.*, 78 N. Y. 122). A policy holder cannot be a " visitor " of the corporation. He cannot interfere with the corporate act and corporate discretion involved in ascertaining and fixing divisible surplus or net profits, and consequent dividends, or compel a fixed rate of dividend on the amount thereof. Dividends, as matter of law, are wholly in the discretion of the board of directors (*Howell* v. *Chicago &c. R. Co.*, 51 Barb. 378 ; *Karnes* v. *Rochester &c. R. R.*, 4 Abb. Pr. N. S. 107). The exact state and condition of the corporate affairs and prospects must be fixed or estimated by the board of directors *ex necessitate* before they can set apart any portion of the company's estimated surplus profits for distribution (*Phelps* v. *Farmers' &c. Bank*, 26 Conn. 267; *Ely* v. *Sprague*, Clarke, 351 ; *Pratt* v. *Pratt*, 33 Conn. 198; *Scott* v. *Eagle Fire Ins. Co.*, 7 Paige 198 ; *State Bank* v. *Bank of Louisiana*, 6 La. Ann. 745 ; *Karnes* v. *Rochester &c. R. R.*, 4 Abb. Pr. N. S. 107). Courts will not direct or restrain them even on the ground that a wrong principle has been adopted (*Yool* v. *Great Western R.*, 20 L. T. N. S. 74 ; *Brown* v. *Monmouthshire R. Co.*, 4 Eng. L. & Eq. 118, 15 Jur. 475). And the board may decide not to declare, even when periods of division are provided by their charter (*Ely* v. *Sprague*, Clarke 351 ; and see charter of this company and amendments). So that dividends can only be lawfully declared out of an ascertained sure margin of divisible surplus as ascertained and fixed by the directors; and any guaranteed dividends (as alleged in the complaint but not proved) would be absurdly impracticable ; against public policy, and certainly *ultra vires* (*Lockhart* v. *Van Alstyne*, 31 Mich. 76 ; *Pittsburgh R. R. Co.* v. *Alleghany Co.*, 63 Pa. St. 126 ; charter of company, Art. VI. § 6).

The law will not allow nor assist the revocation or avoidance, at the option of one party, of the definite final settlement of the old policies and the adoption of the new policy, ratified and so long maintained, as clearly shown in the case, which acquiescence is an estoppel, both in law and in equity, against any attempt to re-open such accounts and adjustments (*Kock* v. *Bonitz*, 4 Daly 117; *Jacob* v. *Lindsay*, 1 East 460; *Knowles* v. *Michael*, 13 East 249). And such settlements will not be disturbed, especially after such long acquiescence as appears here (*Lockwood* v. *Thorn*, 1 Hun 170; *Smith* v. *Marvin*, 27 N. Y. 137; *Chappedelaine* v. *Dechenaux*, 4 Cranch 306). A party attempting to impeach such a settlement must clearly show fraud, or such error or mistake as will justify a court in opening the account (*Townsley* v. *Dennison*, 46 Barb. 490; *Beebe* v. *Robert*, 12 Wend. 413; *Holland* v. *Sprague*, 12 Pet. 330; *Herrick* v. *Ames*, 1 Keyes 190; *Chubbuck* v. *Vernon*, 42 N. Y. 432; *Lockwood* v. *Thorne*, 18 N. Y. 285).

J. F. DALY, J.—[After stating the facts as above.]—We have held in this court that a mutual life insurance company is not a trustee for its policy holders (*Taylor* v. *Charter Oak Life Ins. Co.*, 9 Daly 489). The company receives its premiums as its own property, to do with them what it pleases except as it is restrained by statute; it is wholly immaterial to the policy holder what is done with the money until the maturity of his policy. Dividends are paid out of the profits of a business carried on by the company, and are not in any sense profits made by the policy holder (*People* v. *Security Life Ins. &c. Co.*, 78 N. Y. 114). The relations between the company and the policy holder are those of contractors, the contract being the policy, and the liabilities of the company are to be determined by that (*St. John* v. *American Mut. Life Ins. Co.*, 13 N. Y. 33–39). These authorities must dispose of the case as an action for equitable relief based upon an assumed trust in the officers of the company for the benefit of policy holders. So far as a claim for damages upon

a purely legal cause of action for fraud is concerned, plaintiffs expressly disclaim any; but if we were bound to retain the action to give legal relief (*Sternberger* v. *McGovern*, 56 N. Y. 12) the proof in my opinion fails to establish a ground for it.

Fraud is alleged by which plaintiffs were induced to surrender their policies and their dividends for a sum much below their real value, and to take out a new policy at a higher annual premium and containing terms and conditions less beneficial to the assured. But fraud cannot be alleged against these transactions, because plaintiffs acted with their eyes open with full opportunity for ascertaining every fact which was not patent. The new policy bore a larger premium (based on Mr. Hencken's increased age) than the old ones, and contained harder conditions, but that was apparent on the face of the paper when plaintiffs accepted it. Nothing was then done or said by the company to induce an acceptance of it. It was accepted with four years' premiums credited in advance upon it. No complaint was made until after the four years, when Mr. Hencken went to pay the next premium; and then, with knowledge of all the facts, he used an accrued dividend on the new policy to pay that premium, thus affirming the contract in the strongest manner. Mr. Hencken says that he does not recollect reading the finely printed portions of the policy, but gives no reason for not doing so. Had he read it he would have perceived the stringent conditions as to the use of intoxicating liquors, opiates, as to self-destruction, felony and so forth, which it contained. Having simply neglected to read his contract he can have no relief against defendants.

As to the surrender of accrued dividends amounting on their face to $545.35 on the old policies, for an allowance in cash of $408.99, the plaintiffs knew the amount credited on their policies, and could have ascertained what should have been credited; they were offered as the then present value of the dividends $408.99. No other dividends than those credited on the policy had been declared. The plaintiffs had as much knowledge as defendants of the value of the

dividends; they were not then (May 1st, 1871) payable, but fell due only at Mr. Hencken's death, with the policy. His chance of life was one basis for estimating the present cash value. But they were subject to another contingency—that plaintiffs would keep their contract by payment of premiums and living up to the conditions of the policy. The company used an arbitrary rule for ascertaining present values, viz.: discounting the face of the dividends at $4\frac{1}{2}$ per cent. for the time the policy had to run to maturity, according to life insurance computations. The plaintiffs might make their own guess at the value; whatever might be said on either side was matter of opinion only, upon which no allegation of fraud could be founded. Plaintiffs did not complain of this transaction for seven years, and until this action was brought.

It is said, however, that the old policies surrendered had an "acquired value" and represented a "liability" of the company, exclusive of dividends, amounting to over $2,000, and that setting off the credit of four years' premiums allowed on the new policy, the company was the gainer by the exchange to the amount of several hundred dollars. It seems, however, that the "acquired value" of the old policies was based on a computation of the value of the "reserve" on each policy of the company. This reserve is not a sum of money which in any possible contingency would be payable to the assured, but is that amount which the company "since its organization has been required by law to keep at all times on hand and safely invested, as if, increased by compound interest at $4\frac{1}{2}$ per cent. per annum, would be at any time sufficient to re-insure, protect and indemnify all its outstanding risks and obligations."

If policies be surrendered the gain to the company is the diminished reserve it has to keep up; the reserve is merely a fund for the security of the policy holder, not to be divided with him, and the loss to the assured on this account, when he surrenders a policy, is merely fanciful.

The surrender by the wife of Mr. Hencken was author-

ized expressly by the act, chapter 710, Laws of 1870, section 3.

The judgment should be affirmed, with costs.

VAN BRUNT and VAN HOESEN, JJ., concurred.

Judgment affirmed, with costs.