## SUPREME COURT.

JOHN H. BEWLEY and another agt. THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES and others.

*Insurance (Life) — Policyholders not partners, but mere creditors of the corporation — they can only obtain relief as judgment creditors — Complaint — Demurrer.*

Where plaintiffs, suing as policyholders of the defendant corporation, seek to call the directors of the company to account for various alleged breaches of trust, whereby the company's assets are claimed to be wasted and wrongfully misappropriated, and asks for a receiver and an accounting:

*Held* (sustaining demurrer to complaint), 1. That no trust was created or now exists between the plaintiffs and the defendant corporation and its directors. 2. The plaintiffs' alleged claim being thus reduced to mere creditors of the defendant corporation, which is solvent and able to meet all its obligations, they can only obtain relief as judgment creditors.

*Special Term, July,* 1881.

*William Blakie* and *Francis C. Barlow,* for plaintiffs.

*Alexander & Green,* for defendants.

Bewley agt. Equitable Life Assurance Society.

LARREMORE, J. — The complaint avers, on information and belief, that the defendant corporation was organized under the laws of the state of New York, and is now carrying on the business of life insurance and selling annuities in New York and Massachusetts, on a basis of $100,000 of capital stock, consisting of 1,000 shares of $100 each. That a large majority of such stock is held and professed to be owned by the directors of the corporation as individuals, and a large proportion thereof by the individual defendants. That said stock is legally entitled to receive semi-annually a dividend not greater than seven per cent per annum, and all other assets, savings and property, in excess of legitimate death losses, endowments, annuities and claims, should be and are lawfully vested in and held by said corporation and its directors in trust for the plaintiffs and other policyholders, as security for the payment of policies according to the terms and conditions thereof, which now amount to $150,000, and are held by about 4,500 policyholders. That the directors of said corporation are elected by the votes of the stockholders thereof, who have continued in office for many years the same directors. That the individual defendants, by their control and ownership, or supposed control and ownership of the shares of stock, have been enabled to secure, and have secured, their own election to valuable official positions in said corporation from year to year, and have maintained and exercised absolute and unqualified control and dictation of and over the official conduct and action of said board, and over the management and business affairs of the corporation. That on August 22, 1872, the defendant corporation issued its policy to the plaintiff John H. Bewley for $10,000 upon his life, for the sole use and benefit of his wife, the plaintiff, Mariette Bewley, to be paid to her in the event of his death, if she survived him; if not, then to his children. Plaintiffs have regularly paid the premiums accruing upon the policy, which is now in full force and effect.

The complaint further avers, on information and belief,

that the individual defendants, as officers and directors, in violation of their duty as such, and of the statute in such case made and provided, and to the great loss, damage and injury of the plaintiffs and all the policyholders of said corporation, have wrongfully misappropriated, misapplied and wasted the property thus held in trust, by purchasing and holding certain real estate in the cities of New York and Boston, by the purchase of stock which had not a market value at or above par, in a corporation in which a majority of said defendants were directors, and in the investment of said trust moneys in other corporations, to the benefit and advantage of some of the individual defendants herein. That defendants are simply trustees of the property and assets of the defendant corporation, and that plaintiffs and other policyholders therein are the *cestui que trust* and the only real owners thereof. That the action is brought not only in behalf of the plaintiffs, but of all other policyholders similarly situated. That application has been made to the officers and directors of the defendant corporation to bring an action against the individual defendants to refund the moneys thus misappropriated and wasted, which has been neglected, and no such action has been instituted.

Plaintiffs demand that an accounting of such money be had; that a receiver thereof be appointed, and that an injunction issue restraining the defendants from further action in the premises. To this complaint a demurrer was interposed as to misjoinder and defect of parties; that several causes of action have been improperly united, and that the complaint does not state facts sufficient to constitute a cause of action. The objection last mentioned substantially involves the merits of the controversy and will be first considered.

The demurrer admits only the facts alleged, and not the inferences drawn from them (*City of Buffalo* agt. *Holloway*, 7 *N. Y.*, 493).

From the elaborate and voluminous briefs submitted it becomes a privilege to select, rather than a duty to search for

the law applicable to the case. At its present stage only a short review can be entered into to justify the conclusions reached.

Briefly then, what is the *status* of the plaintiffs under the policy in question as to these defendants? Are the former to be regarded as partners, *cestui que trust* stockholders or creditors, and, if either, to what extent can they invoke the aid of a court of equity upon the facts averred in their complaint? Detailed reference and discussion were made to and upon English authorities, notably the State Fire policies and the Kearns and Aldebert cases, in each of which the insolvency or inability of the corporation to meet its contract liabilities was undisputed. In this connection it should be observed that the peculiar nature of the contracts of insurance influenced the mind of the court (*Evans* agt. *Coventry*, 5 *De Gex, Mac. & Gordon*, 911; *Aldebert* agt. *Leaf*, 1 *Hemming & Miller*, 681; *Re State Fire Ins. Co.*, 11 *Weekly Reporter*, 746). In some cases the English policies contain an agreement charging the fund, and in others the same are signed by the directors of the association.

The Equitable Life Assurance Society is not a mere association, but a duly incorporated company, represented by stockholders and a board of directors. No pretense is made that it is insolvent or unable to meet all of its obligations, but the plaintiffs insist that it has violated the rights and privileges of its charter by improper and unauthorized investments of its funds, to the prejudice of themselves and all other policyholders. The question then occurs, what rights have been invaded and violated, and to what extent, if any, relief may be extended.

In *St. John* agt. *The American Mutual Life Ins. Co.* (13 *N. Y.*, 38), such rights and remedy were defined by the court of appeals in the language of one of its learned judges: " An insurance upon the life of an individual is a contract by which the insurer, for a certain sum of money or premium proportioned to the age, health, profession or other circumstances of

the person whose life is insured, engages that if such person shall die, within the period limited in the policy, the insurer shall pay the sum specified in the policy according to the terms thereof, to the person in whose favor such policy is granted. I am not aware of any principle of law that distinguishes contracts of insurance upon lives from other ordinary contracts, or that takes them out of the operation of the same legal rules which apply to and govern such contracts. Policies of insurance are choses in action; they are governed by the same principles applicable to other agreements involving pecuniary obligations." This view was concurred in by all the judges of the court and should not be disregarded.

In *The People* agt. *Security Life Insurance Co.* (73 *N. Y.*, 114), judge EARL explodes the doctrine that policyholders are to be treated as partners, and says : " They who pay their money for insurance are no more jointly interested or in any sense partners than the depositors in a bank. The depositors swell the assets of the bank and also its liabilities, and they have a common interest that the bank shall keep its funds so as to be able to discharge its liabilities, and that is all.    *      * The fund produced by the payment of all the premiums does not in any sense belong to the policyholders, but belongs exclusively to the company, and the policyholders are interested in it in the same way only that the creditors of other corporations are interested in its funds."

The claim of policyholders upon the theory of partnership was repudiated even in a mutual life insurance company (*Cohen* agt. *N. Y. Mutual Life Ins. Co.*, 50 *N. Y.*, 610; see, also, *Taylor* agt. *Charter Oak Life Ins. Co.*, 59 *How. Pr.*, 468).

In view of the authorities above cited, it is apparent that no trust was created or now exists between the plaintiffs and the defendant corporation or its directors.

Their alleged claim is thus reduced to that of mere creditors of the defendant corporation, and as such, what is their basis of action? The contingency upon which the payment of

their policies depends has not arrived; the company is solvent and able to meet all its obligations, and no actual loss or damage is averred. The case of *Carlisle* agt. *The Guardian Insurance Co.*, and authorities therein cited, were predicated upon a state of facts showing the insolvency of the corporation and amalgamation of its property. The case at bar is not analogous.

It is only as judgment creditors that plaintiffs can obtain relief. This point was decided at the general term of this court by chief justice BARNARD in *Belknap* agt. *North America Life Insurance Co.* (11 *Hun*, 282), and for the purposes of this trial must be regarded as controlling. The distinction between policies of life insurance and other ordinary contracts, which the learned counsel for the respondents insists should be made, must be left to the tribunal of review.

When this case was before the general term, on an appeal from an order denying a motion for leave to amend the complaint, judge BARRETT, in affirming the order appealed from, intimated that even if the complaint was bad, plaintiffs might well be remitted to the discretion of the special term (when the demurrer is disposed of) on the subject of further amendment and costs.

I fail to preceive, upon the conclusion reached, what the plaintiffs can gain by a further amendment in the case, and think that the defendants should have judgment in their favor upon the demurrers.