FULLER and others *v.* KNAPP and others.

*(Circuit Court, S. D. New York. 1885.)*

1. EQUITY PRACTICE—DEMURRER.
   A defendant cannot be permitted, after a demurrer has been overruled which goes to the whole bill, and leave has been given him to answer, to avail himself a second time of the demurrer.

2. SAME—COMPELLING DEFENDANT TO ANSWER INTERROGATORIES.
   A complainant cannot, by motion, compel a defendant to answer certain interrogatories annexed to the bill, but if the answer is insufficient he must present exceptions stating the charges in the bill, the interrogatories applicable thereto to which the answer is responsive, and the terms of the answer *verbatim*, so that the court may see whether it is sufficient or not.

3. SAME — RIGHT OF DEFENDANT TO REFUSE TO ANSWER INTERROGATORIES — EQUITY RULES 39, 44.
   A defendant is at liberty to decline to answer any interrogatory, from answering which he might have protected himself by a demurrer, notwithstanding he answers other parts of the bill; and although he submits to answer, he is not compellable to discover other matters than he would be compellable to discover upon filing a plea in bar and an answer in support of such plea.

4. SAME—EXTENT OF INTERROGATORIES—EXCEPTIONS.
   A complainant cannot interrogate as to matters which he has not put in issue, although he may expand his interrogatories so as to cover every incident of the facts as alleged. If interrogatories are propounded as to facts beyond the scope of the inquiry to which the bill is legitimately addressed, the defendant may omit to answer and have their propriety tested upon exceptions to his answer, as he might by a demurrer to such interrogatories.

5. SAME — LIFE INSURANCE — RIGHT OF INSURED — INTERROGATION AS TO DIVIDENDS.
   Parties to a contract of life insurance do not contemplate that the policy-holder is to be permitted to participate in the management of the company, or dictate the amount of the dividend it shall declare, or question the result after the discretion of its managers has been exercised in this behalf. The contract is that the policy-holder shall have the benefit of such dividends as are appropriated, not such as the policy-holder or the court may think might have been discreetly appropriated by the company.

WALLACE, J.   The complainants' motion is, in substance, one to remove a demurrer from the files. The defendants demurred to the bill for want of equity, and the demurrer was set down for argument, and was overruled. The defendants then answered, and at the same time demurred again to the whole bill. A defendant cannot at the same time answer and demur to the whole bill, though he may demur to part and answer to the residue. Equity rule 32. After a demurrer has been overruled, a defendant may insist upon the same matters by way of defense in his answer. This has not been attempted here. The defendants cannot be permitted, after a demurrer has been overruled which goes to the whole bill, and leave has been given them to answer, to avail themselves a second time of the demurrer. The motion is therefore granted. The complainants also move to compel the defendants to answer certain interrogatories annexed to the bill. This is not correct practice. If the answer is deemed to be insufficient, the complainant must present exceptions stating the charges in the bill, the interrogatories applicable thereto,

to which the answer is responsive, and the terms of the answer *verbatim* so that the court may see whether it is sufficient or not. *Brooks v. Byam,* 1 Story, 296.

As the question of the sufficiency of the answer has been fully discussed by counsel, and elaborate briefs have been submitted asking for a consideration of the merits, it is deemed proper to indicate what disposition should be made of the exceptions when they are formally presented. The bill is for discovery and relief. It seeks an accounting concerning a fund in which the complainants have an interest, and a discovery of facts upon which the amount of the fund and the complainants' interest depends. It is founded upon a policy of insurance issued by the Metropolitan Life Insurance Company, one of the defendants, March 2, 1874, upon the life of Austin B. Fuller to Harriet A. Fuller, his wife. The other defendant, Knapp, is the president of that company. The bill alleges that the company, by the terms of the policy, in consideration of certain payments made and to be made by Harriet A. Fuller, agreed that, should Austin B. Fuller die within 10 years from March 2, 1874, it would pay to Harriet A. Fuller the sum of $10,000; and that, should he survive the said 10 years, the company would pay the said Harriet A. Fuller the sum of $1,231 as a reserve endowment; and also agreed that said policy was issued on the "reserve dividend plan," and that should the premiums be paid as stipulated for 10 years from the date thereof, and should said Austin B. Fuller survive that period, it would pay the said Harriet A. Fuller her equitable proportion of "the reserve dividend fund" in cash.

Further averments are intended to show what is meant by the terms "reserve dividend plan" and "reserve dividend fund" as used in the policy. These averments are to the effect that the company issued certain printed instructions to its agents, and especially to the agent through whom the complainants obtained the policy in suit, containing an explanation of the scheme of insurance, and an exposition of the rights of the assured, and the obligations of the company under a policy issued on the reserve dividend plan. It is alleged that in these instructions the company represented that all persons who take policies within the same year form a class, which is treated by the company as a distinct body for 10 years; that the company guaranties to the policy-holders an equitable share in all the surplus earnings of the company which are to be divided at the end of each year. But the policy-holders stipulate among themselves that all these dividends shall be retained by the company at the average rate of interest obtained on all its investments, and be divided at the end of the 10 years between the policy-holders of the class then living; that if any policy is forfeited for non-payment of premiums, the dividends which have already accrued upon it inure to the benefit of the other policy-holders of the class, and are to be retained by the company, invested and divided at the end of the 10 years among the living members of the

class; and that death-claims are paid out of the general funds of the company, and not out of the class fund exclusively. It alleges that the company also represented in these instructions that the reserve fund under the reserve dividend plan is accumulated from several sources: from ordinary dividends arising from the general earnings of the company; from the dividends which lapsed to the class by the death of members before the expiration of 10 years; and from the dividends forfeited to the class by non-payment of policies, and by retiring members.

The bill alleges that the complainants accepted their policy upon the faith of these representations as to the character and incidents of "the reserve dividend plan," and that these representations are in fact a correct statement of the plan as the term is used in the policy. It further alleges that many other persons became insured in the same class with complainants, upon the reserve dividend plan; some of whom died within the 10 years, whereby the accumulated dividends upon their policies accrued to the general fund; some of whom retired, and thereby forfeited their dividend; and that the policies of others lapsed. That interest was earned by the company upon its investments, and defendants are now in possession of the whole fund accruing to the class. That the defendants have in their possession books and records showing all these facts, details of which are not known to complainants, and without a discovery of which complainants cannot prove the facts upon which their rights to relief depend.

The bill contains appropriate allegations to show that complainants duly paid the premium upon the policy during the 10 years, and that Austin B. Fuller survived the 10 years of its duration, and the complainants became entitled to the equitable proportion of the reserve dividend fund in cash, due to policy-holders of the class of 1874. Interrogatories are propounded to the defendant calling for a statement of the earnings of the company during the 10 years, and incidentally of the receipts, expenses, and losses; a statement of the average interest received by the company on its investments during the 10 years; a statement of the names of policy-holders in the class of 1874; and how long each policy continued in force, what premiums were paid upon it, what dividends were earned when it lapsed or matured, what interest was earned by the fund, and what payments had been made from it. The defendants are also interrogated whether the company issued to their agents, or to the agent through whom the complainants insured, the instructions explaining the reserve dividend plan as set forth in the bill; and whether the term "reserve dividend plan" as used in the policy is the plan described in the instructions; and if not as so described, defendants are required to state what is the correct meaning of the term.

The answers of the defendants admit the issuing of the policy described in the bill; set out the policy in full; deny that the company issued such instructions to its agents as are stated in the bill; deny

that such instructions correctly describe the meaning of the term "reserve dividend plan" as used in the policy; allege that the policy alone comprises the whole contract between the parties; admit that many other persons became insured in same class with defendants, under the reserve dividend plan; admit that dividends were earned on some of the policies, and that some of the persons so insured died, some retired, and some forfeited their dividends; admit that interest was earned by the company upon its investments; and allege that the company has set apart and apportioned the fund among the different policies entitled to the same, and now holds the equitable proportion of the fund earned by the complainants' policy, and is ready and willing to pay over the same. They refuse to answer the interrogatories requiring them to state what is meant by the term "reserve dividend plan," or what its meaning is as used in the policy; and refuse to answer any of the interrogatories which call for statements of facts, by which the amount of the reserve dividend fund for the class of 1874, and complainants' proportion thereof, can be ascertained.

The material parts of the policy, as set forth by the defendants, are the same as is alleged by the bill, except that it contains the following clauses:

"At the request of the assured this policy is issued upon the reserve dividend plan. * * * This policy shall not be entitled to any share in the dividend surplus of said company other than at such time and after the manner and upon the conditions hereinbefore described."

There is nothing in the policy to explain the features of the reserve dividend plan, what obligations the company assumes to the policyholder, or what interest accrues to the policy-holder whose policy is issued under such plan.

A defendant is at liberty to decline to answer any interrogatory, from answering which he might have protected himself by a demurrer, notwithstanding he answers other parts of the bill, (equity rule 44;) and, although he submits to answer, he is not compellable to answer other matters than he would be compellable to discover upon filing a plea in bar, and an answer in support of such plea. Equity rule 39.

The sufficiency and the equity of the bill have been considered upon a former occasion, when the demurrer was overruled. It was then held that if the contract between the parties was such as is asserted by the bill, the beneficiary in the policy, at the end of the 10-year period, was entitled to recover a sum, the amount of which, if disputed, would involve the taking of a complicated account, in which the discovery sought by the bill would be essential to enable complainants to proceed. From the nature of the transactions involved, it is apparent that practically all the information which is indispensable to enable complainants to ascertain what sum they are entitled to is exclusively within the knowledge of the officers of the company.

Upon the case made, they are entitled to a portion of the fund, the amount of which necessarily involves an inquiry as to the number and amount of the policies of the class of 1874, the dividends which accrued upon them, the number that have been forfeited or have lapsed by retirement or death, the times when they lapsed or became forfeited, and of the interest due upon the investment of the dividends. In the management of this fund the company acts as the agent, in a limited sense, of the policy-holders, and owes them the duty of keeping a correct account of the fund. It refuses to render that account, and seemingly takes the position that the policy-holders have no right to an account. Jurisdiction in this class of cases, depending as it does, not so much on the absence of the common-law remedy, as upon its inadequacy, is exercised largely as a matter of judicial discretion, influenced by the particular circumstances of each case and the conduct of the parties. *Northeastern Ry. Co.* v. *Martin,.* 2 Phil. 758; *Southeastern Ry. Co.* v. *Brogden,* 3 Macn. & G. 23; *Foley* v. *Hill,* 2 H. L. Cas. 28; *Anderson* v. *Noble,* 1 Drew. 143; *Bliss* v. *Smith,* 34 Beav. 508; *Pike* v. *Dickinson,* L. R. 7 Ch. App. Cas. 61.

Whether, if discovery were not sought, the bill would be maintainable, it is not necessary to decide; it is sufficient that, being one for discovery as well as for relief, it falls within the class recognized by the authorities as cognizable in equity. *Mackenzie* v.*Johnson,* 4 Madd. 373; *Phillips* v. *Phillips,* 9 Hare, 471; *Shepard* v. *Brown,* 9 Jur. (N. S.) 195; *Hemings* v. *Pugh,* Id. 1124; *Makepiece* v. *Rogers,* 11 Jur. (N. S.) 314; *Dinwiddie* v. *Bailey,* 6 Ves. 136; *Moses* v. *Lewis,* 12 Price, 502; Story, Eq. § 458; *Miller* v. *Kent,* 16 FED. REP. 13.

When the bill was before the court upon demurrer, it was not necessary to determine with precision how far the complainants were entitled to a discovery respecting the matters of the bill, although it was then incidentally intimated that some of the interrogatories were beyond the scope of the allegations. A complainant cannot interrogate as to matters which he has not put in issue, although he may expand his interrogatories so as to cover every incident of the facts alleged. If interrogatories are propounded as to facts beyond the scope of the inquiry to which the bill is legitimately addressed, the defendant may omit to answer, and have their propriety tested upon exceptions to his answer, as he might by a demurrer to such interrogatories.

There are no allegations in the bill which authorize the complainants to interrogate the defendants respecting the general earnings, expenses, and losses of the company during the 10 years in question. There is nothing in the policy itself, or in the conditions of the reserve dividend .plan, as the features of that plan are described in the bill, which authorizes a policy-holder to require the company to appropriate or apportion annually among its policy-holders its surplus net earnings; much less to apportion such a sum as might have been realized as net income, if the company had conducted its business

prudently and efficiently. A dividend is a sum actually apportioned. The parties to a contract of life insurance do not contemplate that the policy-holder is to be permitted to participate in the management of the company, or dictate the amount of the dividend it shall declare, or question the result after the discretion of its managers has been exercised in this behalf. The contract is that the policy-holder shall have the benefit of such dividends as are appropriated, not such as the policy-holder or a court may think might have been discreetly appropriated by the company. It follows that the defendant should not be required to answer interrogatories Nos. 8, 11, 13, 14, 15, 16, 17. The seventh interrogatory would seem to call for all information necessary in support of the facts alleged in the bill, so far as they relate to the amount of the reserve dividend fund. Interrogatories Nos. 9, 10, and 12 are repetitions in part of No. 7, with modifications which are not material in any aspect that the accounting may present.

The other interrogatory which is not answered, calls upon the defendant to describe the term "reserve dividend plan," and to state what its meaning is as used in the policy. Inasmuch as the defendants deny that the plan is such as the complainants allege it to be, and there is nothing in the policy itself to indicate what are its features or details, and the covenants of the policy cannot be interpreted without the aid of the explanation, the defendants are properly called upon to explain the meaning of the term. Greenl. Ev. §§ 280, 293. The parties treat in reference to the conditions and features of that plan. In one view it may be regarded as an extrinsic agreement, incorporated by reference into the policy. In another, the term may be considered as having a signification, by usage, known to experts, and which is to be ascertained from competent witnesses. It is not known to have a legal, defined meaning. What that term means as used in the policy is a conclusion of law, and so far as the interrogatory calls for a legal conclusion it does not require an answer.

The defendants cannot be excused from answering the interrogatories upon the ground that their answer sets up matters by way of defense which are a bar to the suit. It is said by Mr. Tyler (Mit. & T. Eq. Pl. 74) that "the modern practice of making of defenses by answer has lead to great confusion; and questions in pleading have arisen so paradoxical that judges, perplexed and bewildered, have hardly known how to decide them." No perplexity exists, however, in this case. The answers, taking their affirmative and negative statements together, do not meet the material allegations of the bill, so far as they relate to the rights of the complainants to call upon the company for an accounting. The material facts are admitted upon which their right rests, and it is not denied that the company now has in its possession a sum of money to which they are entitled.