EVERSON v. EQUITABLE LIFE ASSUR. CO.

(Circuit Court, W. D. Pennsylvania. March 11, 1895.)

1. EQUITY JURISDICTION—BILL FOR DISCOVERY AND ACCOUNTING.
    Where a bill seeks both discovery and an accounting, the discovery must be regarded, prima facie, as incidental to the accounting, and, if there is no right to an accounting, the bill will be held bad upon demurrer.

2. LIFE INSURANCE—SEMI-TONTINE POLICY—BILL FOR ACCOUNTING.
    The relation between the holder of a matured semi-tontine policy and the insurance company is that of debtor and creditor merely, and involves no trust relation; and a policy holder who is dissatisfied with the amount of the surplus which is apportioned to him by the company, pursuant to the terms of the policy, cannot maintain a bill for accounting and discovery when there are no sufficient allegations of fraud.

This was a bill by T. Bissell Everson against the Equitable Life Assurance Company praying a discovery and accounting in respect to the amount due him under a matured semi-tontine life insurance policy. Defendant demurred to the bill.

Watson & McCleave, for complainant.
Willis F. McCook, for respondent.

BUFFINGTON, District Judge. On August 12, 1884, the respondent, the Equitable Life Assurance Company, a corporation created by the state of New York, issued a life insurance policy to the complainant, T. Bissell Everson, then and now a citizen and resident of Pennsylvania, for $10,000. Certain provisions were made part of said policy, the ones pertinent to the present question being:

"First. That this policy is issued under the semi-tontine plan, the particulars of which are as follows: Second. That the tontine dividend period for this policy shall be completed on the 28th day of May, in the year eighteen hundred and ninety-four. Third. That no dividends shall be allowed or paid upon this policy unless the person whose life is hereby assured shall survive the completion of its tontine dividend period as aforesaid, and unless this policy shall be then in force. Fourth. That all surplus or profits derived from such policies on the semi-tontine plan as shall not be in force at the date of their completion of their respective tontine dividend periods shall be apportioned equitably among such policies as shall complete their tontine dividend period. Fifth. That upon the completion of the tontine dividend period, on May 28, 1894, provided this policy shall not have been terminated previously by lapse or death, said T. Bissell Everson shall have the option either, first, to withdraw in cash this policy's entire share of the assets; i. e., the accumulated reserve, which shall be twelve hundred and thirty-one and ten one-hundredth dollars, and, in addition thereto, the surplus apportioned by this society to this policy; secondly," etc.

That by this contract of insurance the relation created between the parties was that of debtor and creditor is firmly established by numerous authorities. Uhlman v. Insurance Co., 109 N. Y. 421, 17 N. E. 363; Hunton v. Assurance Co., 45 Fed. 661; People v. Security Life Ins. & Annuity Co., 78 N. Y. 114; Bewley v. Society, 61 How. Prac. 344; Bogardus v. Insurance Co., 101 N. Y. 328, 4 N. E. 522;

Taylor v. Insurance Co., 9 Daly, 489. Mr. Everson paid his premiums for 10 years, amounting in all to $2,725, and then elected to avail himself of the first option, whereupon he was entitled to demand and the company became liable to pay to him "this policy's entire share of the assets; i. e. the accumulated reserve, which shall be twelve hundred and thirty-one and ten one-hundredth dollars, and, in addition thereto, the surplus apportioned by this society to this policy." Thereupon the society apportioned to him, as the policy's share of the assets, the sum of $2,051.80, being $1,231.10, the share of the accumulated reserve as fixed by the option, and $820.70, the policy's alleged share of the surplus. This apportionment, made by the person designated by mutual agreement to make it, is presumably correct. Uhlman v. Insurance Co., 109 N. Y. 432, 17 N. E. 363. "But," as was also said in that case, "the question is still left, has or has it not complied with its agreement to make an equitable apportionment? And the plaintiff, and all others similarly situated, have the right, upon proper allegations of fact showing that the apportionment made by the defendant is not equitable, or has been based upon erroneous principles, to have a trial and make proof of such allegations, and, if proved, the court will declare the proper principles upon which the apportionment is to be made, so as to become an equitable apportionment." The apportionment thus made Mr. Everson declined to accept, and subsequently filed the present bill in equity, in which he prayed for an accounting and discovery. To this bill the respondent has demurred—First, because the bill discloses no cause of action; secondly, because the complainant has an adequate remedy at law; thirdly, because the bill does not disclose sufficient facts to entitle him to the remedies prayed for; fourthly, because the court has not jurisdiction of the subject-matter; fifthly, because the court is without jurisdiction to enforce its decree against the respondent; sixthly, because the bill does not set forth in full the contract; and, lastly, because the other policy holders have not been made parties.

Assuming, for present purposes, that the bill as a whole shows the matter in dispute exceeds the sum of $2,000, does it disclose any cause of action? Two such grounds are alleged, viz. discovery and accounting. In passing on the question here raised, it is to be observed that in the federal courts the line between law and equity, and consequently between legal and equitable rights, has been strictly observed,—a principle so firmly established as to call for no citation of authority in its support. In Hare on Discovery (sections 6–8), it is in substance said that the prayer for an account renders a bill one for relief, and, where a bill prays for relief, the discovery, if material to the relief, is incident to it, and that, prima facie, it must be so intended. It would appear, therefore, that, upon demurrer to a bill seeking both discovery and relief, it is sufficient to show that the complainant is not entitled to the relief which he prays, and that the addition of a prayer for relief to a bill seeking discovery will render such discovery dependent upon the title to relief. "The bill" (discovery) "is commonly used," says Story's Equity Pleadings (section 331), "in aid of the jurisdic-

tion of some court of law, to enable the party who prosecutes or defends an action at law to obtain discovery of the facts which are material to the prosecution or defense thereof. If it can be used in any other cases, they are few, and under very special circumstances." It is quite clear that, upon the facts alleged in this bill, discovery is not an independent ground of relief, but is dependent upon complainant's right to an accounting. The case, therefore, resolves itself into the question whether, irrespective of the question of discovery, the right to an accounting exists. What such an accounting involves, in the present case, is well to understand. In effect, it is an examination of the respondent company's business for the past 10 years. Its magnitude is apparent from the interrogatories and prayers to the bill by which the complainant himself has measured the scope of inquiry necessary to such relief. They are therefore given in full, and are as follows:

"1. State definitely and in the following order the number of policy; the kind of policy; the amount of policy; the date of the application therefor; the date of policy; the age at issue; the annual premium charged; the number of premiums paid; how paid,—quarterly, semiannually, or annually; reserve or savings-bank value; and tontine surplus on all policies that were in force in the tontine class to which policy No. 281,864 became a part of on the 28th day of May, 1884. 2. State definitely and in the 'following order the number of policy; the kind of policy; the amount of policy; the date of application therefor; the date of the policy; the age at issue; the annual premium charged; the number of premiums paid; how paid,—quarterly, semiannually, or annually, and, if quarterly or semiannually, how many such payments were made; reserve or savings-bank value; and tontine surplus on all policies issued between the 28th day of May, 1884, and the 27th day of May, 1894, inclusive. 3. State definitely and in the following order the number of policy; the kind of policy; the amount of policy; the date of the application therefor; the date of policy; the age at issue; the annual premium charged; the number of premiums paid; how paid,—quarterly, semiannually, or annually, and, if quarterly or semiannually, how many such payments were made; reserve or savings-bank value; and tontine surplus unpaid on the same on all policies that have lapsed and become wholly or partially forfeited by the cessation of premium payments thereon, and the values of which have been wholly and absolutely forfeited to the tontine fund of the class to which policy No. 281;864 belonged. 4. State definitely and in the following order the number of policy; the amount of policy; the date of application therefor; the date of policy; the age at issue; the annual premium charged; the number of premiums paid; how paid,—quarterly, semiannually, or annually, and, if quarterly or semiannually, how many such payments made; reserve or savings-bank value; and the tontine surplus at the date of discontinuance of premium payments on all policies that have been so discontinued; the amount of paid-up participating or non participating insurance issued for each policy, and the net single premium on the same, or cash value paid for the same, between and including the dates of May 28, 1884, and May 27, 1894. 5. State definitely and in the following order the number of policy; the kind of policy; the amount of policy; the date of application therefor; the date of policy; the age at issue; the annual premium charged; the number of premiums paid; how paid,—quarterly, semiannually, or annually, and, if quarterly or semiannually, how many such payments made; reserve or savings-bank value; and tontine surplus on all policies in force on the 28th day of May, 1894. 6. State specifically the percentage of actual expense to actual premium income properly chargeable in each and every one of the years from May 28, 1884, to May 28, 1894. 7. State specifically the rate of interest received on the total admitted assets for each and every one of the years from May 28, 1884, to May 28, 1894. 8. State specifically the ratio of mortality per dollar of risk; that is to say, the ratio of mortality upon the

face of the policy less the reserve or savings-bank fund belonging to each policy in each and every one of the years from May 28, 1884, to May 28, 1894.

"First. And that the said defendant may be ordered, adjudged, and decreed to make and exhibit unto the plaintiff a full and particular account, showing unto him his proportionate share for each and every year of the tontine term of his policy; of the actual death losses, and his saving from the death losses, actually paid by the defendant to tontine members only in his class among the insured of the defendant; also, his proportionate share of the actual expenses and his savings from the assumed expenses of conducting the tontine business of the defendant society for each and every year of the ten years constituting the tontine term of your orator's policy; as well, also, your orator's true share of the interest received upon his savings-bank deposit in excess of four per cent. per annum compounded, as required by law, and the actual rate and amount of interest received by the defendant upon such savings-bank deposit; also, your orator's share of the forfeitures resulting from all policies by the failure of members in his class to pay their annual premiums.

"Second. And that your orator may order and decree that the defendant exhibit a full and particular statement showing the numbers, amounts, and kind of policies, and ages at which they were severally issued, upon which the values of all kinds have been forfeited, partly or entirely, to the tontine fund during the tontine term of your orator's policy; showing each policy issued by the defendant society lapsed or forfeited during the tontine term of your orator's contract aforesaid; and therein showing the number of the policy and name of the insured, the age of the insured at the time of the issuing of the policy, and form of the policy, and the amount for which the same was issued, the number of payments made upon such policy, and the total amount paid previous to forfeiture, and the share of the tontine fund belonging to such policy at the time or immediately previous to the lapsing or forfeiture thereof, showing particularly and in detail sources from which the accumulations of the tontine fund belonging to such lapsed policies were derived; and that the defendant may be required to show particularly what proportion of the value of such lapsed policy at the time of the lapse was derived from the share of such policy in previous forfeitures of the savings-bank fund or tontine profits belonging to such policies so previously forfeited.

"Third. And that the said defendant may be ordered and decreed to account to your orator for his savings-bank fund, and the accumulations thereon; his savings upon the assumed expenses paid in his annual premiums, and their accumulations; also, his savings upon the assumed mortality losses paid in his annual premiums, and their accumulations; his share in the tontine fund derived from all policies lapsed during the tontine term of his policy aforesaid; and that the aggregate of such sums be decreed as a cash value of your orator's said policy, and that the defendant be ordered and decreed to pay such sum so ascertained to your orator."

An alleged breach of contract obligations, and the ensuing accountability to answer in damages therefor, do not necessarily imply liability to an accounting by bill in equity. In other words, accountability does not imply liability to an accounting in equity. But prior liability to so account is the foundation upon which a bill in equity for an accounting rests. If such a duty exists,—to instance the present case,—it exists without reference to whether the respondent has equitably apportioned the surplus or has failed to do so. On the other hand, if such a duty does not exist,—if the respondent has simply contracted to equitably apportion the surplus, and pay the complainant on that basis, and has failed to do so,—its breach of that contract would not impose an obligation to account where none primarily rested, and its broken undertaking must be redressed by another proceeding and in another tribunal than the present one. The stipulations of the policy in question are the measure of the

respondent's obligations and the complainant's rights as well. Notwithstanding the very able argument of complainant's counsel, in which we have had the benefit of his thorough research and study of the subject of life insurance, we are unable to read into this contract any other relation between the parties than those of debtor and creditor. While the principles of honest and prudent corporate management may dictate, and the positive enactments of law in several states may enforce, the formation and maintenance of adequate reserve funds to insure the protection of policy holders and the liquidation of their claims as they mature, yet we cannot say, from the terms of the contract here entered into between the parties, that such reserve was to be the individual property of the policy holder, and that the company holds it for him as a trustee, with the consequent duty of accounting for it as a trust fund. As was said in a kindred case, "there is, in reality, no specific or separate fund, as it is made up simply by a system of debits and credits contained in the books of the company, which debits and credits are made during the running of the tontine period."

The underlying fallacy of complainant's bill is the assumption as a fact of a duty on the respondent, not to respond in damages for its breach of contract, if such there was, but to account; and, because it has not accounted, complainant claims the right to file his bill to compel such accounting and for discovery in aid thereof. But unless there was a duty to account, the complainant cannot base his bill on respondent's failure so to do, for such refusal was not a denial of what complainant was entitled to demand. If such right exists in one stockholder, it exists in all, and each, by virtue of the maturing of his policy, would have the right to demand an individual account of the kind here craved. If such is the case, the business of insurance companies would be largely diverted from their sphere of husbanding their resources to meet their contract obligations to those insured to that of preparing voluminous accounts for policy holders. In Hunton v. Assurance Co., 45 Fed. 662, the liability of the respondent to account in equity on a bill based on a policy similar to the one in suit arose. The court said:

"If this bill can be maintained, it must be on the ground that a trust relationship existed between the parties, or that the account was of such a character that equity jurisdiction attaches. That no trust exists between the insured and the insurance company has been held in Pierce v. Society, 145 Mass. 56, 12 N. E. 858, and Bewley v. Society, 61 How. Prac. 344, and I agree with the reasoning of the court in those cases. I am also of opinion that under the authority of Root v. Railroad Co., 105 U. S. 189, this being merely a suit for an account, and it not appearing that any other ground of equitable jurisdiction exists, a bill in equity cannot, upon general principles governing the jurisdiction of courts of equity, be maintained:"

It is sought to distinguish that case, which is the latest federal decision on the question, from the present one by the fact that there accounting alone was sought, while here discovery is asked in addition. We have already seen that discovery is dependent upon the right to an accounting, so that, in effect, the question there involved was the same as here. It is true there are some allegations in the present bill that respondent has falsely and fraudulently valued

the complainant's equity, that circulars of estimated profits issued before Mr. Everson took out his policy were suppressed, and that complainant believes the reported value of the equity to be false, but these are accompanied by admissions that complainant does not know, and cannot state, its true value. The allegations are of such a vague and general nature, and there is such an absence of specific fact and detail that, as bearing on the question of fraud, we are justified in disregarding them (see 1 Beach, Mod. Eq. Prac. § 107; Ambler v. Choteau, 107 U. S. 590, 591, 1 Sup. Ct. 556), and in passing on the question purely as one of a right to an accounting by a bill in equity. After full consideration, we are of opinion that no cause of action, in the present form of procedure, is shown by the bill.

The demurrer will therefore be sustained.