# CASES

## ARGUED AND DETERMINED

### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS.

---

BROWN v. EQUITABLE LIFE ASSUR. SOC. OF THE UNITED STATES.

(Circuit Court of Appeals, Second Circuit. February 7, 1907.)

INSURANCE—POLICY HOLDER IN MUTUAL COMPANY—RIGHT TO MAINTAIN SUIT FOR ACCOUNTING.

A policy holder in a life insurance company organized under the laws of New York, which, while a stock company, is doing business on the mutual plan, and is required by its laws, through its officers, to make an equitable distribution of its accumulated surplus between its policy holders, may maintain a suit in equity against it, on behalf of himself and all other policy holders joining, for an accounting and other equitable relief where the bill alleges that the distribution made is not equitable, charges its officers with fraudulently wasting and misappropriating its surplus, and sets out specific facts tending to prove such allegations.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, § 77.]

Appeal from the Circuit Court of the United States for the Southern District of New York.

For opinion of court below, see 142 Fed. 835.

H. S. Marshall (John R. Dos Passos, Joseph De F. Junkin, George Gordon Battle, Edmond F. Harding, of counsel), for appellant.

Allan McCulloh (Henry Hill Pierce and Alexander & Green, of counsel), for appellee.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

PER CURIAM. This cause comes here by appeal from order and decree of the United States Circuit Court for the Southern District of New York sustaining demurrer to and dismissing amended bill. The bill, brought by a policy holder on behalf of himself and all other policy holders of defendant and its annuitants, alleges the incorporation of defendant as an insurance company under a charter and declaration which provides that its cash capital stock shall be $100,000, divided into shares of the par value of $100 each, on which its stockholders are entitled to receive semiannual dividends not exceeding $3\frac{1}{2}$ per cent. The bill further alleges that the defendant's net earnings are to be accumulated, that it is to be conducted on the mutual plan, and that the

surplus as ascertained upon a balance struck by its officers is to be equitably credited or applied for the benefit of the policy holders.

The bill further alleges that the complainant has elected to receive his equitable share of said surplus; that the amounts apportioned and allowed to him by the defendant are not the real amounts of his equitable share in the true surplus, but that, by reason of abuse of discretion, wrongs, and inequitable conduct of its officers and agents, the defendant and its officers and stockholders have wrongfully retained, and fraudulently wasted, and misappropriated to themselves, a large portion of the surplus of the defendant belonging to the policy holders, and that certain of said stockholders in a pending suit have asserted the stockholders' ownership of and right to the whole or a portion of said surplus as against said policy holders. The report of the investigating committee of the board of directors, commonly known as the "Frick Report," and the report of the superintendent of insurance of the state of New York of June 21, 1905, are made a part of the bill, and it is averred that the statements therein contained are true. The bill further avers that complainant has no adequate remedy at law, and prays for equitable relief.

The defendant assigns various grounds in support of its demurrer, which may be summarized under the claim that the bill fails to state a cause of action, and it relies upon various decisions of the courts of the state of New York and of the federal courts where it is claimed that upon a similar state of facts said courts have held that a policy holder had no right to such equitable relief.

An examination of the authorities which are material to this discussion shows that, upon whatever other grounds the courts may have reached conclusions adverse to the rights of policy holders, yet in none of said cases in the federal courts or in the court of last resort of the state of New York have there been definite, specific allegations of facts charging bad faith, willful neglect, abuse or indiscretion, fraud or misappropriation by the defendant. A single citation from the opinion of the court in Uhlmann v. New York L. I. Co., 109 N. Y. 421, 17 N. E. 363, 4 Am. St. Rep. 482, will serve to illustrate the principle which appears to be applicable generally to the cases cited by defendant where these questions have been considered.

In the Uhlmann Case, Judge, now Mr. Justice, Peckham, delivering the opinion of the court, says as follows:

"We do not, however, accede to the claim of the defendant herein to its full extent as made in the brief submitted, which is that the apportionment, as made by the defendant, is absolutely, and at all events conclusive upon the policy holders. We hold that, under the terms of this policy, the apportionment was to be equitably made, and, in the first instance, by the defendant's officers or agents. But, inasmuch as the agreement is that the apportionment shall be an equitable one, the question of what is an equitable one, all the facts and circumstances being known, may be one over which the courts have supervision. Prima facie the apportionment as made by the defendant should be regarded as a compliance with the terms of the policy, or, in other words, should be regarded as an equitable apportionment. It should be thus regarded, because by the terms of the policy the duty of making it is cast upon the corporation, and it ought to be presumed that the defendant has performed its duty instead of presuming that it has failed to do so. But the question is still left: Has or has it not complied with its agreement to make an equitable ap-

portionment? And the plaintiff, and all others similarly situated, have the right, upon proper allegations of fact showing that the apportionment made by the defendant is not equitable, or has been based upon erroneous principles, to have a trial and make proof of such allegations, and, if proved, the court will declare the proper principles upon which the apportionment is to be made, so as to become an equitable apportionment. The various cases cited in the briefs submitted, where the Legislature has appointed parties to apportion stock in a bank created by its laws, etc., and where the courts have held that the apportionment by the board thus created was final, do not, we think, conclude us here. The principles are entirely different. But, as the plaintiff herein has made no proof of any misappropriation or wrongdoing, we are of the opinion that, upon the first question argued, he has failed to show any right to an accounting by the defendant."

To the same effect are the decisions in Fuller v. Metropolitan Life Ins. Co. (C. C.) 37 Fed. 163; Pierce v. Equitable Life Assurance Co., 145 Mass. 56, 12 N. E. 858, 1 Am. St. Rep. 433; Everson v. Equitable Life Assurance Co. (C. C.) 68 Fed. 258; Greeff v. Equitable Life Assurance Co., 160 N. Y. 19, 54 N. E. 712, 46 L. R. A. 288, 73 Am. St. Rep. 659; Fuller v. Knapp (C. C.) 24 Fed. 100.

In the Greeff Case, supra, which was an action at law, the court held that, if the action were to be regarded as one for an accounting, it was prohibited by section 56, c. 690, p. 1958, of the Laws of 1892 of the state of New York.

Inasmuch as counsel for defendant state in their brief that "this statutory provision has been repealed since the decision was rendered" below, and have neither discussed the point in their brief nor in the oral argument, the statute cannot now be regarded as a bar to this suit.

In the case at bar the precise situation is presented which was foreshadowed in the opinions referred to above, and thereby this case is differentiated from the preceding cases. Here the reports referred to and made a part of the bill are replete with specific circumstantial allegations of the precise facts constituting the fraud, waste, and mismanagement complained of, in connection with a detailed showing either of direct loss of funds, or of illegal and unauthorized diversion and misappropriation of a considerable share of profits belonging to defendant, and of further waste and mismanagement by the payment of salaries originally excessive and unwarrantably increased, and of improper investments of, and failures to invest, the funds of defendant, particularly set forth in detail, all resulting in penetration of wrongs on the policy holders through violation of defendant's obligations to them.

In these circumstances, and without passing upon any of the other questions presented as to the respective rights and obligations of the parties, we conclude that upon the facts alleged in the bill, and, for the single purpose of testing its sufficiency, admitted by the demurrer, complainant has a right to appeal to a court of equity for relief, and that the defendant is bound to answer the allegations of the bill.

The order sustaining the demurrer and the decree dismissing the bill are reversed, with costs, and the cause is remanded to the court below, with leave to the defendant, if it shall be so advised, to answer over within such time as the Circuit Court shall decree.

LACOMBE, Circuit Judge. In recording concurrence with the conclusion of the majority of the court, I am not to be understood as expressing or intimating an opinion upon any of the questions raised and argued upon the appeal, except the single one that because the bill contains express and specific charges of fraud the case is brought within the class pointed out in the Uhlmann Case, and cannot be thrown out upon a general demurrer as not stating facts sufficient to constitute a cause of action.