JOHN TAYLOR *et al.*, Appellants, *against* CHARTER OAK LIFE INSURANCE COMPANY, Respondent.

(Decided February 7th, 1881.)

A complaint in an action by the holders of a policy of life insurance against the insurance company, which alleges that the action is brought, "as well in behalf of these plaintiffs as of all such other policy-holders similarly situated, who may choose to come in," &c., is necessarily limited to equitable relief.

Where from such a complaint it appears that, by the terms of the plaintiffs' policy, it has been forfeited by failure to pay the premiums, allegations that, at the time of such failure to pay, the plaintiffs had been informed of certain wrongful acts of the company, its officers and managers, stated in detail in the complaint as violations of the company's charter, and that as a result of such wrongful acts the company had then become insolvent and it had become unsafe for the plaintiffs to pay further premiums, do not show a sufficient excuse for a refusal to pay premiums while the company continued to do its ordinary business in the ordinary way and was ready to receive premiums.

Provisions of a "participating policy" of life insurance, under which the insured is entitled to share, with others holding similar policies, in the surplus profits of the insurance company after payment of dividends not exceeding a fixed rate upon the stock of the company, do not create a trust relation between the policy-holder and the company.

APPEAL from a judgment of this court entered upon an order sustaining a demurrer to a complaint.

The action was brought upon a policy of life insurance, by the person whose life was insured, and his wife, to whom the amount of the insurance was payable, against the company by which the policy was issued. The complaint alleged the incorporation and organization of the defendant under a special

charter granted by the state of Connecticut, and set forth the provisions and object of the charter, and the facts as to the ownership of the corporate stock. It then alleged the issue of the plaintiffs' policy, its terms, and the payment of premiums and performance of all its conditions by the plaintiffs down to June, 1877; and that "the plaintiffs were thereafter at all times ready and willing to keep and perform the terms and conditions of said policy; but in the month of June, 1877, they were informed, and they then first knew of the wrongful acts hereinafter mentioned of said corporation, its officers and managers; and the plaintiffs thereupon refused to pay, and as hereinafter stated, they were by the said wrongful acts thereafter excused and absolved from paying further premiums upon said policy; but the premiums which had been theretofore paid were in fact paid while the plaintiffs were wholly ignorant of any or either of the wrongful acts, or breaches or trust, hereinafter mentioned; that in or about June, 1877, defendant obtained possession of said policy, and ever thereafter retained the same, and, although requested so to do, refused, and still refuses to surrender the same to the plaintiffs."

It also alleged that "the plaintiffs' said policy was a 'participating policy,' and the insured thereunder was entitled to share in, and be credited with, a ratable proportion of all the profits of the business of said corporation; and the plaintiffs are informed and believe that all, or more than nine-tenths of the other policy-holders holding policies in 1877, were in like manner entitled to participate in said profits under their respective policies; and this action is brought as well in behalf of these plaintiffs as of all such other policy-holders similarly situated, who may choose to come in according to the practice of this court in such cases, and have the benefit of the same."

The complaint then alleged the existence of a large number of other policies of the corporation outstanding, and large receipts and profits from the business of the corporation; that the capital stock was limited to 8 per cent. per annum as its share of such profits, and the balance belonged to the holders of participating policies; that the dividends were limited to

the amount of clear profits, and the capital stock was to remain unimpaired; with other averments as to methods of business; and it claimed that the plaintiffs and all the other policyholders had a right to have the business of the corporation continued while their policies remained in force, and to have all profits and surplus either held in trust for them or divided among them; and that the premiums and all its funds, assets and property of every kind were held by the corporation upon certain express and implied trusts; among them "that said corporation, its officers and managers, would thereafter perpetually carry on and conduct its business according to law, and in compliance with the methods and customs aforesaid, and in accordance with correct principles of life insurance; that it would continue to accept from each and every policy-holder his premium annually, or at other stipulated periods during the life of each one, or during such other period as should be provided for the terms of each policy; that it would safely invest and keep all of its accumulations of assets, and preserve and hold the same as provided by law; that it would keep and perform the conditions of each and every policy; that it would make true and correct reports to the authorities of the State of Connecticut; that it would keep and perform, and would not violate the terms and conditions of its charter, and that it would ever thereafter keep, invest and hold its entire assets,— as it was in fact by law and by the nature of said business required to do,—in trust for the security and protection of each and every policy-holder, and for the performance, among others, of the trusts aforesaid."

The complaint then stated in detail various alleged wrongful acts of the corporation, its officers and managers, as breaches of the trusts alleged and violations of the corporate charter; and averred that when the plaintiffs ceased to pay premiums, the corporation was and had since remained insolvent, and had on that ground attempted to compromise with its policyholders, without effect, and was thereby exposed to extensive, vexatious and expensive litigation; and the plaintiffs claimed that, by reason of such wrongful acts, the plaintiffs were prevented from continuing and keeping their policy in force, and

that "it thereby became and was, in and prior to June, 1877, unsafe for the plaintiffs, or any other policy-holders, to pay further sums of money by way of premiums to said corporation; and said policy had become, and was at that time, of no value, and was worthless for the purposes for which it was originally issued; that for the reasons aforesaid, and by reason of the wrongful acts and breaches of trust hereinbefore mentioned, the plaintiffs, in June, 1877, refused to pay, and were absolved and excused from paying, and they have not paid further premiums on said policy; and the plaintiffs offer to allow the same to be canceled, and declared null and void."

Judgment was demanded, that said corporation be decreed to be the trustee of the plaintiffs, and of all the policy-holders; and for an accounting for premiums, &c., and a general account of the management of its business and affairs, of moneys received and expended, loans and investments, &c.; and for the repayment to the plaintiffs of all sums of money received from them, with earnings or interest, &c.; and that the trusts be declared broken and terminated. The defendant demurred to the complaint on several grounds, among which the eighth and last was that the complaint did not state facts sufficient to constitute a cause of action. Upon argument, the demurrer was sustained, and on the order sustaining the demurrer judgment for the defendant was entered. From this judgment the plaintiffs appealed.

*W. I. Butler*, for appellants.—The demurrer concedes all the facts alleged in the complaint. Conspicuous in the complaint is the feature of a trust existing between the parties. Breaches of this trust are alleged specifically, and these facts being conceded, the proper parties in interest have either of two rights: one to rescind the trust and recover the moneys paid upon it; the other, to disregard the trust and to recover, by way of a claim for damages, the same moneys on the same breaches which have prevented the fulfillment of the object and arrangement of the parties,—whether that arrangement be called a trust, contract, duty, or obligation. The complaint is adapted to either of these species of remedy or rights of

action; its averments will sustain relief of either kind.  If the plaintiffs are entitled, upon their complaint, to any relief or judgment whatsoever, then the eighth ground of demurrer must be overruled.

The action is solely and simply to recover the premiums paid.  No other ultimate relief is sought for than this.  The accounting is only incidental to the final judgment to be obtained; it is in no sense a separate and substantive cause of action.

Upon the subject of a *trust* existing between the defendant and its policy-holders, the averment of the fact, in the complaint, that the corporate assets were held under *a trust* for the plaintiffs' benefit, must be deemed admitted by the demurrer. The court cannot take judicial notice, and it must be guided by the pleadings, as to the nature of the assets of a life insurance company.

It should not be disputed that a trust exists in any case where there is mutual participation in profits ; a community of profits as between the stockholders and the policy-holders; and where the corporation is in possession of the fund, in respect to whose earnings such community of profits exists.  Where one party is in possession and has the control of a fund, in whose earnings such party is entitled to participate in common with another party, there a trust exists.  Such is the case at bar.  The only authority, cited against this proposition, is the case of the *Security Life Ins. & Annuity Co.* (78 N. Y. 129) ; and perhaps also *St. John* v. *American Mutual Life Ins. Co.* (13 N. Y. 31) ; but the point, whether or not the assets are held in trust, was not directly presented in either case.  The case in 50 N. Y. 610, and that of *Mygatt* v. *New York Protection Ins. Co.* (21 N. Y. 52), which both discuss the question of partnership, do not controvert the position that, while there may not be a copartnership, there is, in fact, a trust relation.

The plaintiff's right of action was not defeated by lapse of the policy, by the non-payment of the premium.  There was an implied agreement on the part of the company to obey the law of its creation and existence, and to do its bidding as required by the statute.  Therefore, when it violates the law,

fails to keep on hand funds required by law, and becomes insolvent, 'discontinues business, makes it impossible for the assured to pay premiums, and he' fails to pay premiums and fails to carry the policies, it has broken its engagement with its policy-holders, and becomes liable to them on account of such breach. The policy-holders then have a claim for damages, just as they would have, if, while doing business, it had, without just cause, refused to receive the payment of premiums, and to continue the policies in life (*New York Life Ins. Co.* v. *Statham,* 93 U. S. 24; *Fischer* v. *Hope Mutual Life Ins. Co.,* 69 N. Y. 161; *Bell's Case,* L. R. 9 Eq. 706; *Cook's Case,* Id. 703; *Holdick's Case,* L. R. 14 Eq. 72.) These policy-holders are therefore in the same position as any other persons would be who had running contracts of value with the company, which it had broken—claimants for damages (*People* v. *Security Life Ins. &c. Co.,* 78 N. Y. 129).

Further payments of premiums are excused by the failure of the company. For the purpose of enforcement, the policies were just as effectual as if the premiums had been actually paid (Opinion of EARL, J., filed October 15, in *Att. Gen.* v. *Guardian Mutual Life Ins. Co.,* 82 N. Y. 336).

*A. J. Vanderpoel* and *Charles B. Alexander,* for respondent.—The policy is lapsed, and all interest therein has ceased. The allegations of the plaintiffs that they let their policy become forfeited because they thought defendant was insolvent, &c., are ineffectual. An insurance company of a sister state must be considered solvent as long as we allow it to do business here; and it is solvent in this state, even if insolvent elsewhere (L. 1853, c. 463, as amended in 1869, § 15); and plaintiffs had constructive notice of the operations of the company (ld.; *Kent* v. *Quicksilver Min. Co.,* 78 N. Y. 159). Mere allegations of insolvency or corporate abuse are not sufficient (*Gray* v. *New York, &c. S. S. Co.,* 3 Hun, 383). Nor is the fact that the contractor has not money to perform, a ground of rescission (*Day* v. *Insurance Co.,* 45 Conn. 480). The averments of the complaint do not show insolvency; the complaint shows de-

fendant to be solvent (*Holbrook* v. *Basset*, 5 Bosw. 147 ; *People* v. *Atlantic Mutual Life Ins. Co.*, 74 N. Y. 180.)

Plaintiffs would have no right of action, even if they held a policy in the company. The policy-holder is not a *cestui que trust*, and neither the directors nor the company are trustees. The policy-holder is not a partner. He is not a creditor.. He is not a member of the company. He is a person who holds an agreement to receive a certain sum on a certain day (Opinion of BEACH, J., in *Hencken* v. *United States Life Ins. Co.; St. John* v. *American Mutual Life Ins. Co.*, 13 N. Y. 38; *People* v. *Security Life Ins. Co.*, 78 N. Y. 114 ; *Cohen* v. *New York Mutual Life Ins. Co.*, 50 N. Y. 610).

Under the decisions (*New York Life Ins. Co.* v. *Statham*, 93 U. S. 24 ; *Fischer* v. *Hope Mutual Life Ins. Co.*, 69 N. Y. 161; *Bell's Case*, L. R. 9 Eq. 706 ; *Cook's Case*, Id. 703 ; *Holdrich's Case*, L. R. 14 Eq. 72), these policy-holders are in the same position as any other persons would be who held running contracts of value with the company which it had broken —claimants for damages. The damage sustained by each of these policy-holders is, clearly, the value of the policy which has been destroyed. When such value has been ascertained the true measure of damage has been arrived at. It is also well settled that a policy-holder is not such a creditor of the corporation as authorizes him to bring such an action as this (*Knickerbocker Ins. Co.* v. *Comstock*, 9 N. B. Reg. 484; *Ramsey* v. *Gould*, 57 Barb. 405 ; *Belknap* v. *North America Life Ins. Co.*, 11 Hun, 282; *People* v. *Security Life Ins. Co., supra; King* v. *Accumulative Life Fund, &c. Co.*, 3 C. B. N. S. 151; *Trenton Co.* v. *McKelway*, 1 Beas. 133 ; *Commonwealth* v. *Massachusetts Co.*, 112 Mass. 116 ; *Mutual Benefit Co.* v. *Hilyard*, 8 Vt. 444). Even a stockholder has no such right (*Ramsey* v. *Gould*, 57 Barb. 398 ; *Howe* v. *Deuel*, 43 Barb. 504; *City of Utica* v. *Churchill*, 33 N. Y. 238 ; *People* v. *Security Life Ins. Co., supra*.) Certainly they had not the interest of copartners (*Baldwin* v. *Burrows*, 47 N. Y. 199 ; *Ogden* v. *Astor*, 4 Sandf. 311 ; *Pattison* v. *Blanchard*, 5 N. Y. 186 ; *People* v. *Security Life Ins. Co., supra*). The

" creditor " of the Revised Statutes is a judgment creditor (*Hastings* v. *Drew*, 76 N. Y. 18).

The complaint seeks to have an examination of the affairs of the defendant. In other words, it seeks to invoke some imaginary visitorial powers of the court, over the affairs of a foreign corporation. There is no visitorial power (*Att. Gen.* v. *Utica Ins. Co.*, 2 Johns. Ch. 390 ; *Auburn Academy* v. *Strong*, Hopk. 317). Business corporations were, until a few years ago, unknown in England (*Colman* v. *Eastern Ry. Co.*, 10 Beav. 13). The power of visitation never rested in the court of chancery, as such, even in England (Grant on Corporations, 529, and cases cited ; *Att. Gen.* v. *Smart*, 1 Ves. Sen. 72 ; *In re Bedford Charity*, 2 Swanst. 524) ; but in the chancellor or other person who holds the great seal (*Ex parte Dann*, 9 Ves. Jr. 546 ; *King* v. *Master, Fellows, &c. of St. Catharine's Hall*, 4 T. R. 233 ; *Eden* v. *Foster*, 2 P. Wms. 325). It was a crown prerogative (*Ex parte Wrangham*, 2 Ves. Jr. 609, 619 ; *Att. Gen.* v. *Dixie*, 13 Ves. Jr. 519. See *Att. Gen.* v. *Utica Ins. Co.*, 2 Johns. Ch. 371; *Robertson* v. *Bullions*, 11 N. Y. 252 ; *Howe* v. *Deuel*, 43 Barb. 504 ; *Latimer* v. *Eddy*, 46 Barb. 61; *Ramsey* v. *Gould*, 57 Barb. 398 ; *Belmont* v. *Erie Ry. Co.*, 52 Barb. 666). The statute 43 Eliz. is not in force in this state (*Dutch Church* v. *Mott*, 7 Paige, 77). When the power is vested in an officer, the chancellor refuses to interfere (*King* v. *Chester*, 1 W. Blackst. 22 ; *Att. Gen.* v. *Foundling H.*, 2 Ves. Jr. 42). So here (*Fisher* v. *World Ins. Co.*, 47 How. Pr. 456). The courts would hesitate at allowing visitatorial power ; it is uncontrolled (Grant on Corp. 536, also 335 ; 5 Campbell Lives, p. 288, App.). These arguments have increased weight with reference to foreign companies. There is no record of the king having claimed such a power with reference to a foreign company.

The investments and expenditures complained of, are legal. The charter and policy are before the court. All the intimations that the several acts complained of were not necessary or lawful ; also as to the duty of the company ; also as to what the agreement provided ; and all such statements, are not admitted by the demurrer, and are not before the court (*City of*

Taylor *v.* Charter Oak Life Ins. Co.

*Buffalo* v. *Holloway*, 7 N. Y. 493; *Lawrence* v. *Wright*, 2 Duer, 673; *Drake* v. *Cockroft*, 4 E. D. Smith, 34; 2 Wait's Pr. 306; *People* v *McCumber*, 27 Barb. 632; Van Sant. Eq. Pr. 94; *Wright* v. *Scott*, 34 Ex. & E. 1).

Independent of positive law, all corporations have the absolute *jus disponendi* of lands and chattels, neither limited as to objects nor circumscribed as to quantity (2 Kent's Com. 12 ed. 281; *Barry* v. *Merchant's Exch. Co.*, 1 Sandf. Ch. 280; *Binney's Case*, 2 Bland Ch. 142; *Burton's Appeal*, 57 Penn. St. 213; *Sherwood* v. *Am. Bible Soc.*, 1 Keyes, 561; *Miners' Ditch Co.* v. *Zellerbach*, 37 Cal. 543; *Dupee* v. *Water Power Co.*, 114 Mass. 37). Acts done by a corporation which presuppose the existence of other acts to make them legally operative are presumptive proofs of the latter (*Kent* v. *Quicksilver Min. Co.*, 78 N. Y. 183; *Nelson* v. *Eaton*, 26 N. Y. 410.) It is well settled that the corporation may alienate its corporate property if not required for immediate use (*Simpson* v. *Westminister Hotel Co.*, 8 H. L. C. 712; *Forrest* v. *Manchester Ry.*, 30 Beav. 40; *Brown* v. *Winnisimmet Co.*, 11 Allen, 326; *Spear* v. *Crawford*, 14 Wend. 20.) Defendants have never been prohibited by any statute from holding land in a foreign state. If the objection is to the purchase of land in this state, the defendant has such right (*Bank of Augusta* v. *Earle*, 13 Pet. 589; *Ohio & Miss. R. R. Co.* v. *Wheeler*, 1 Black [U. S.] 286, 296, 297; *McCulloch* v. *Maryland*, 4 Wheat. 365; *Lumbard* v. *Aldrich*, 8 N. H. 31; *State* v. *Boston R. R.*, 25 Vt. 443; *Thompson* v. *Swoope*, 24 Pa. 480; *Runyan* v. *Costar's Lessee*, 14 Pet. [U. S.] 130; *McDonogh* v. *Murdock*, 15 How. [U. S.] 413). The dealings of a corporation which on their face, or according to their apparent import, are within its charter, are not to be regarded as illegal or unauthorized without some averment tending to show that they are of such a character (*Kent* v. *Quicksilver Min. Co.*, 78 N. Y. 159; *Chautauqua Co. Bank* v. *Risley*, 19 N. Y. 369; *New York Firemen Ins. Co.* v. *Sturges*, 2 Cow. 664; *Safford* v. *Wyckoff*, 4 Hill, 442; *Ex parte Peru Iron Co.*, 7 Cow. 540; *Farmers' Loan, &c. Co.* v. *Perry*, 3 Sandf. Ch. 339; *De Groff* v. *American Linen Thread Co.*, 21 N. Y. 124; *Yates* v. *Van De Bogert*, 56 N. Y.

526; *Taylor* v. *Chichester R'y Co.*, L. R. 2 Ex. 366, 384). From a consideration of these propositions it appears that the defendant has violated no rule of law.

The statements of the complaint respecting the compromise show the company to be abundantly solvent; and the allegation " that by reason of all the policy-holders not assenting to such compromise, the same is invalid and ineffectual as to those who have assented," is simply the conclusion of the pleader of what he thinks is the law, and is not admitted by the demurrer (see, on pleading conclusions of law, *Latham* v. *Westervelt*, 26 Barb. 260; *Chapin* v. *Potter*, 1 Hilt. 366; *Hatch* v. *Peet*, 23 Barb. 575; *Van Schaick* v. *Winne*, 16 Barb. 89; *Ensign* v. *Sherman*, 13 How. Pr. 35; *Schenck* v. *Naylor*, 2 Duer, 675).

VAN BRUNT, J.—This is an appeal from a judgment in favor of the defendants, entered upon the trial of an issue of law raised by the demurrer of the defendants to the plaintiffs' complaint. There were numerous grounds of demurrer set up, but it is only necessary to consider the eighth and last, which was as follows: " That the complaint does not state facts sufficient to constitute a cause of action."

It is somewhat difficult to see upon what theory the plaintiffs, being simply the holders of a policy issued by the defendants, can intervene in the management of its affairs. The plaintiffs by reason of such policy hold simply a contract upon the part of the defendants, that upon the happening of a certain contingency, they will pay a certain amount, and in addition thereto, that after paying the dividends upon the stock of the company, the defendants will divide the surplus profits amongst the parties holding similar contracts to that held by the plaintiffs.

In the year 1877, while the defendants were still continuing to do business as a life insurance company, the plaintiffs ceased to pay the annual premiums which became due upon the policy or contract held by them. In 1879 or 1880 this action was commenced claiming some breach of the plaintiffs' contract with the defendants.

It is somewhat difficult to determine precisely what relief the plaintiffs think themselves entitled to. From the nature of the

argument of the plaintiffs' counsel upon the hearing of the appeal herein, we must infer that the plaintiffs suppose that they are at least entitled to recover damages. This right of action, however, has been eliminated by the form of the complaint, which is brought, not only upon behalf of themselves, but upon behalf of " all other policy-holders similarly situated, who may choose to come in according to the practice of this court in such cases, and have the benefit of the same," which language makes the complaint one necessarily limited to equitable relief.

But if this were not so, even at law the complaint shows no right of action. By the failure to pay the premiums which fell due upon the policy, the policy lapsed and the contract became null and void. Such are its provisions. The plaintiffs have endeavored by certain allegations in their complaint to excuse this forfeiture by stating that at the time of this failure they had become acquainted with certain wrongful acts of the managers and officers of the corporation, which are stated in detail in the complaint, and consist of alleged violations of the charter of the company in investments made, and in the manner in which the business of the company has been conducted; and that as a result of such violations of the charter the company had then become insolvent. In support of this position the plaintiffs cite as authorities the cases of *The People* v. *The Security Life Insurance and Annuity Company* (78 N. Y. 114); *Fisher* v. *The Hope Mutual Life Insurance Company* (69 N. Y. 161), and *The Attorney General* v. *The Guardian Mutual Life Insurance Company* (82 N. Y. 336).

An examination of those cases shows that it was held that the refusal to receive the premiums upon the policy either by a failure to do business, or by making such refusal while the company was in operation, was a breach of the contract between the parties, and gave the policy-holder a right of action for damages, and that upon this point nothing more is decided in those cases. It nowhere intimates that while a corporation is doing business, ready to receive premiums, ready to conduct its ordinary business, in the ordinary way, that a policy-holder shall have the right to refuse to pay his premiums upon the ground that he thinks that the corporation is insolvent, and call

it into court to prove its solvency. No such rule could possibly obtain in respect to the contracts between individuals, and it is difficult to see upon what basis such a rule could be alleged in reference to corporations.

It is alleged upon the part of the plaintiffs that this policy constituted some trust relation between the policy-holder and the corporation. Upon what principle that trust relation rests we are left entirely in doubt. It is not claimed that it rests upon the principle of a copartnership, but upon some undefined trust relation.

It is urged that a trust exists in any case where there is a mutual participation in profits. That this assumption has no foundation in law is evidenced by the many cases of contracts for services repaid by participation in profits. There does not, therefore, seem to be any ground upon which this idea of a trust relation can be made to stand, and the rights of the plaintiffs are to be adjudicated precisely the same as would be those of any other persons who had failed to comply with the terms of their contract.

It, therefore, seems to be reasonably certain that the ground adopted by the learned justice in the court below, in sustaining the demurrer, was well taken, and that the judgment must be affirmed with costs.

CHARLES P. DALY, Ch. J., and J. F. DALY, J., concurred.

Judgment affirmed, with costs.