preponderance of judicial authority, in this country, that the words refer to a death without issue in the lifetime of the testator, and that the primary devisee, surviving the testator, takes an absolute fee simple.    Jackson v. Bull, 10 Johns. 19; Vanderzee v. Slingerland, 103 N. Y. 47, 8 N. E. 247; Stokes v. Weston, 142 N. Y. 433, 37 N. E. 515; Washbon v. Cope, 144 N. Y. 287, 39 N. E. 388; Benson v. Corbin, 145 N. Y. 351, 40 N. E. 11.

There is, however, another insurmountable obstacle to the maintenance of this action.    The right of action is purely statutory, and the statute does not apply to these taxes.    The sale threatened is not for a term of years.    The city has no authority to sell the premises for a term of years.    The sale can only be made by a decree of the court made in an action to enforce the lien of the taxes; and the charter (section 241) requires that all persons having any lien upon or interest or estate in the property shall be made parties defendant, and all such persons are barred and foreclosed of all liens, interest, or estate by the final judgment.    The sale is subject only to state and county taxes and United States liens.    In case the city brings such an action to foreclose the lien of these taxes, the court can adjust and protect the rights of the defendants by providing for a sale in parcels, and sufficient only to pay the taxes, which is the sole relief that could be granted under the statute which the plaintiff seeks to bring this action within.    So far as the evidence shows, the taxes in question are general annual city taxes; and, if the defendant were only a life tenant, it would be her duty to pay them all, and there would be nothing for a court of equity to apportion between them.    Peck v. Sherwood, 56 N. Y. 615; Thomas v. Evans, 105 N. Y. 612, 12 N. E. 571.    The defendant being a nonresident, and there being no evidence that she has other property out of which the court could compel her to pay the taxes, the action probably could not be sustained even if presented and tried on that theory, which it has not been.

The complaint is therefore dismissed, upon the merits, with costs.

---

(24 Misc. Rep. 96.)

GREEFF v. EQUITABLE LIFE ASSUR. SOC. OF UNITED STATES.

(Supreme Court, Special Term, New York County.    June, 1898.)

1. INSURANCE—ENDOWMENT POLICIES—ACTION FOR UNDECLARED DIVIDEND.
    It is no defense to an action at law by an endowment policy holder for a dividend he has not received, that no dividend has been declared.

2. SAME—DIVIDENDS—RIGHT TO PAYMENT IN CASH.
    An endowment policy holder, claiming larger dividends than he has received, may demand a cash payment therefor, notwithstanding his policy contemplates an application of his dividends to the purchase of additional insurance, or an annuity, according to his election, where such election has been made and disregarded.

3. SAME—POLICY—CONSTRUCTION—SURPLUS.
    An endowment policy provided that insured was entitled to "participate in the distribution of the surplus according to such principles as may from time to time be adopted by this society for such distribution, which principles and methods are hereby ratified and accepted for every person who shall have or claim any interest under this contract." Held,

that the insurer did not thereby promise to divide its whole surplus among the policy holders, and that the policy alone determined the obligations of the insurer, notwithstanding its charter may have directed such a division should be made.

4. SAME—CONSTRUCTION OF CHARTER.

The charter of a company issuing endowment policies provided, in reference to its surplus profits, that "each policy holder shall be credited with an equitable share of the said surplus," and the right to determine what is an equitable share was to rest in the discretion of the officers of the company, "in view of present circumstances and future contingencies." *Held*, that a division of its surplus each year, after the retention of a part to strengthen the company to meet its obligations to its policy holders, was not a division to which a policy holder could object as inequitable.

5. SAME—ACTION FOR UNPAID DIVIDENDS—COMPLAINT—SUFFICIENCY.

In an action by the holder of an endowment policy for $20,000, against an insurance company for larger dividends than he had received during the life of his policy, from 1882 to 1897, the complaint alleged that, "according to the principles and methods adopted by the defendant for distribution of surplus, there was distributed in the year 1895 to the plaintiff $328, as his proportion of a surplus amounting to $2,002,954.23, and that the proportion due this plaintiff of the $43,277,179 net surplus ascertained on December 31, 1896, according to the same principles and methods, which were the same principles and methods in force during the life of plaintiff's policy, is $7,087.38, in addition to the amount of surplus actually awarded, of $3,932; making a total amount of $11,019.38 of surplus, and $20,000 of principal." What the methods and principles are, were not set forth, but it was alleged that an apportionment of surplus was made each year the policy was in force. There is nothing to show that the distribution claimed will accord with the methods and principles of distribution adopted by the company. The complaint set forth proportions of the surplus distributed to plaintiff each year, and the net accumulation each year above the sum distributed; but the figures show that different elements entered into each year's distribution, which the complaint ignored. *Held*, that the complaint showed that an accounting was necessary to determine the rights of the parties, and that as such a proceeding, under the insurance laws (Laws 1892, c. 690, § 56; Laws 1890, c. 400), must be on the application of the attorney general, the complaint failed to state a cause of action.

6. SAME—PLEADING CONCLUSIONS.

The complaint was also demurrable because it merely stated conclusions, without alleging the facts necessary to sustain its demand for the amount claimed.

Action by Emil Greeff against the Equitable Life Assurance Society of the United States. On general demurrer to the complaint. Sustained.

Dickinson W. Richards and Richards & Heald, for plaintiff.

Wm. B. Hornblower, Charles B. Alexander, and Alexander & Green, for defendant.

DALY, J. The plaintiff was the holder of an endowment policy in the defendant company for $20,000, which he took out in 1882, and which matured in 1897, when he received the sum mentioned, together with $3,932, as additions, to which had been devoted his annual dividends or share of the surplus profits allotted to him by the company. This action is brought to recover $7,087.38, on the ground that said sum would be due and payable, in addition to what he actually received, if the company had allotted to him his proportion of its whole surplus; his claim being that the company was bound to

divide all of its surplus profits among its policy holders, and that its ascertained net surplus on December 31, 1896, was $43,277,179, of which he has received no portion.   His complaint refers to the charter of the company, which provides that its officers, every five years, "shall cause a balance to be struck of the affairs of the company, which shall exhibit its assets and liabilities, both present and contingent, and also the net surplus after deducting a sufficient amount to cover all outstanding risks and other obligations.   Each policy holder shall be credited with an equitable share of the said surplus," to be applied to the purchase of additional insurance or an annuity, or in reduction of future premiums, as the policy holder may elect.   His complaint also refers to the statute of 1868, c. 118, which gave to this company power to make annual dividends in the manner· and proportions provided in its charter or articles of association, and to the statute of 1872, c. 100, providing that any life assurance society organized under the laws of this state may ascertain at any given time, and from time to time, the proportion of surplus accruing to each policy from the date of the last to the date of the next succeeding premium payment, and to distribute the proportion found to be equitable, either in cash, in reduction of premium, or in reversionary insurance payable with the policy, and upon the same conditions as therein expressed, at the next succeeding date of such payment, anything in the charter of any company to the contrary notwithstanding.   The complaint also refers to the policy issued to the plaintiff, as a contract with him, providing:

"This policy, during its continuance, shall be entitled to participate in the· distribution of the surplus of this society, by way of income, to the amount insured, according to such principles and methods as may from time to time be adopted by this society for such distribution, which principles and methods are hereby ratified and accepted by and for every person who shall have· or claim any interest under this contract; but the society may at any time before a forfeiture, upon request of the person holding the absolute legal title· to this policy, substitute a cash payment, to be fixed by said society, in lieu of the said increase to the amount insured, to be used in reduction of subsequent premiums."

The contention of the defendant is that the plaintiff's contract with the company, as contained in his policy, does not require that the whole surplus or profits of the company shall be divided among. the policy holders; that if the contract embraced the charter provisions as well as the stipulation of the policy, and both taken together gave a right to plaintiff, as policy holder, to a division of the whole surplus, still an action at law would not lie for any specific sum until. such sum had been allotted to the plaintiff; that this action, although. in form an action at law, involves an accounting to ascertain what sum, if any, equitably belongs to plaintiff, and is not maintainable, in view of the provision of the insurance law (Laws 1892, c. 690, § 56; Laws 1890, c. 400) that proceedings for an accounting against the corporation must be upon the application of the attorney general; and that plaintiff's right, if any, to a larger dividend than he received, gives no right to demand a cash payment, but, under the charter, to have such dividend applied to the purchase of additional insurance· or an annuity.

506   52 NEW YORK SUPPLEMENT   (Sup. Ct.

and 86 New York State Reporter.

The last contention, as well as the argument that the fact that the dividend to which plaintiff may be entitled has not been declared is fatal to an action at law on his behalf, does not, I think, rest upon very strong grounds. While it is the general rule that an action at law cannot be maintained by a stockholder for a dividend which has not yet been declared (1 Cook, Stock, Stockh. & Corp. Law, §§ 272, 542, 545, and note; Boardman v. Railway Co., 84 N. Y. 157; Thomas v. Railway Co., 139 N. Y. 163, 34 N. E. 877; Day v. Railroad Co., 107 N. Y. 129, 13 N. E. 765; Railroad Co. v. Nickals, 119 U. S. 296, 7 Sup. Ct. 209), the rule has no application to a policy holder in a life insurance company who is not a stockholder. In the case of a stockholder, whether a dividend be declared or not, he remains the owner of an interest which increases in value by the surplus accumulated; and such surplus, by ultimate distribution, will be shared by him. But the policy holder has no share or interest which increases in market value by the accumulation, and, as his account with the company is closed by the payment and surrender of his policy, his right to a share in any of its funds must be determined without reference to the rules which govern the continuing relations of a stockholder with his company. And with reference to the contention that the policy holder is only entitled to such an application of his dividend as the policy contemplates, namely, to the purchase of additional insurance or an annuity, that objection is not available when the only dispute is as to the amount of the dividend; the election of the assured to apply his dividends to the purchase of additional insurance having already been made. If the additional dividends claimed were the plaintiff's right, his action could be treated as one for breach of contract in withholding such dividends; and the damages recoverable would be such sums, with interest.

There remain two objections of defendant to the maintenance of this action: One is to the merits,—that plaintiff's contract with the company gives him no right, so far as his complaint shows, to a greater dividend than he has received; and the other is to form,— that the share, if any, to which plaintiff is equitably entitled, can only be ascertained by an accounting, and that, under the statute cited, the attorney general alone is authorized to bring the necessary action therefor.

The objection that the plaintiff's contract with the company, as set out in the complaint, gives no right to the moneys demanded, seems to be well taken. The relation between the policy holder and the company is purely that of contracting parties. The company is not a trustee for its policy holder, nor required to account to him, as to a cestui que trust. Taylor v. Insurance Co., 9 Daly, 459. The obligation of the company is upon contract, and the policy constitutes the contract. Hencken v. Insurance Co., 11 Daly, 282. Consulting this policy, to ascertain what the company contracts with reference to the surplus, we find that the insured is entitled to "participate in the distribution of the surplus according to such principles and methods as may from time to time be adopted by this society for such distribution, which principles and methods are hereby ratified and accepted for every person who shall have or claim any

interest under this contract." There is no promise that the whole surplus shall be divided up among the policy holders, but, in effect, that the plaintiff shall participate only in the distribution which the company may conclude from time to time to make. It is urged, however, that under its charter the company is bound to distribute its whole surplus each year among the policy holders; but, if the charter contains such a requirement, the policy does not, and the plaintiff would first have to procure a reformation of his contract before he could enforce such a requirement. We must seek the contract in the policy, and, as this action is brought upon the contract, we must look to the policy, and the policy alone, if its provisions be unambiguous, for the obligation of the company. But does the charter of the company authorize the policy holders to demand the division of the whole surplus among them? It provides that "each policy holder shall be credited with an equitable share of the said surplus." The right to determine what is an equitable share rests in the discretion of the officers of the company, "in view of present circumstances and future contingencies. A court or jury could not exercise that discretion, even if the agreement did not, as it does, contemplate that the officers should exercise it in trust for the whole body of the holders of policies." Fisher v. Insurance Co., 52 N. Y. Super. Ct. 179. This discretion has been exercised for a long series of years, and always in one way, by the officers of this company (and we may take judicial notice of a fact, conceded upon the argument, that the same course has been pursued in all the mutual companies), namely, to distribute but a portion of the net surplus each year, and to accumulate the balance, in order to strengthen the company by this guaranty of an additional fund to meet its obligations to its policy holders. It would be hazardous to affirm that a principle so long and universally acted upon, and generally acquiesced in, was not equitable; that is to say, just and fair to the whole body of policy holders. The officers of the company are persuaded that its ability to fulfill its obligations would be imperiled by its stripping itself of its whole surplus to make division annually among its policy holders, and so, in order to guard existing and future surplus accumulations, the policy is issued with the stipulation that the holder ratifies and accepts the company's methods of distribution of its surplus. This plaintiff so agreed, and took out his policy with that stipulation. It was for him to ascertain before making the contract whether the methods of distribution adopted by the company were such as he deemed equitable, and particularly whether the whole surplus was to be distributed. From the accumulations on hand when he took his policy (amounting to over $8,000,000 in 1882), he could hardly assume the latter fact. Whether the companies can lawfully exact such a contract from persons applying for policies is a question between the companies and the state from which they derive their charters, but it would seem that no such question can arise between the company and its policy holders, who are under no compulsion to make the contract.

With regard to the objection that the complaint does not set forth facts entitling plaintiff to a judgment for the sum demanded, but

requiring an accounting to ascertain what sum is due, a serious question is presented.    The allegation of the complaint is that:  .

"According to the principles and methods adopted by the defendant for distribution of surplus, there was distributed in the year 1895 to the plaintiff $328, as his proportion of a distribution of a surplus amounting to $2,002,954.23,. and that the proportion due this plaintiff of the $43,277,179 net surplus ascertained on December 31, 1896, according to the same principles and methods, which were the principles and methods in force during the life of plaintiff's. policy, is $7,087.38, in addition to the amount of surplus actually awarded, of $3,932; making a total amount of $11,019.38 of surplus, and $20,000 of principal."

These are statements, not of fact, but of conclusions, and the complaint is demurrable for want of the necessary allegations of fact to sustain the demand for the sum of $7,087.38 claimed.    The plaintiff, under the terms of his policy, must abide by the methods and principles adopted by the company in distributing its surplus; and he professes to base his claim upon them, conceding their correctness. What these methods and principles are, is not set forth, but it is alleged that an apportionment of surplus has been made each year that the policy was in force; and it is manifest that it will require a series of further apportionments made for each of those years of the undistributed surplus to correspond with those actually made and set forth in the complaint.    Instead of seeking to recover upon such a method, which would correspond to that adopted by the company in arriving at the annual sums that make up the $3,932 allotted to plaintiff, he arbitrarily selects the amount apportioned to his policy in the year 1895, which is $328, and is larger than the sum allowed for any other year, and seeks to recover the same proportion of the entire net surplus of $43,277,179 as $328 bears to $2,002,954.23, which was the surplus distributed in 1895.    The complaint does not show that such a distribution will accord with the methods and principles of distribution adopted by the company, for such methods and principles are not set forth.    The complaint seems to be fatally defective in this regard.    For aught that appears in the complaint, an account of the business of the company for each year that the plaintiff's policy was in force will have to be gone into, in order to ascertain what proportion of the whole surplus he was equitably entitled to each year,— a hardship which the legislature has sought to relieve the company from at the suit of a single policy holder.    The complaint sets forth proportions of the surplus distributed to the plaintiff each year, and the net accumulation of each year over and above the sum distributed. A comparison of these figures shows that different elements or factors. entered into the distribution of each year, and these differences the complaint ignores; but they must be the subject of inquiries which make an accounting indispensable.    There seems, therefore, to be a visible defect in the complaint, (1) in failing to show facts that entitle plaintiff to the proportion of the net surplus which he demands in this action; (2) in failing to show that an accounting will not be required in order to ascertain what further sum is due to the plaintiff; and (3) in failing to show that the plaintiff's contract with the company entitles him to any greater sum than he has received.